IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA<br>Plaintiffs,<br><br>v.<br>City of Hastings, Dravo Corporation,<br>and Dutton-Lainson Company<br><br>Defendants. | CIVIL ACTION NO. 07-365 |

## RD/RA CONSENT DECREE

# TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | BACKGROUND | 1 |
| II. | JURISDICTION | 3 |
| III. | PARTIES BOUND | 3 |
| IV. | DEFINITIONS | 4 |
| V. | GENERAL PROVISIONS | 7 |
| VI. | PERFORMANCE OF WORK BY SETTLING DEFENDANTS | 8 |
| VII. | REMEDY REVIEW | 11 |
| VIII. | QUALITY ASSURANCE, SAMPLING, AND DATA ANALYSIS | 12 |
| IX. | ACCESS | 13 |
| X. | REPORTING REQUIREMENTS | 14 |
| XI. | EPA APPROVAL OF PLANS AND OTHER SUBMISSIONS | 16 |
| XII. | PROJECT COORDINATORS | 17 |
| XIII. | PERFORMANCE GUARANTEE | 18 |
| XIV. | CERTIFICATION OF COMPLETION | 21 |
| XV. | EMERGENCY RESPONSE | 23 |
| XVI. | PAYMENTS FOR RESPONSE COSTS | 24 |
| XVII. | INDEMNIFICATION AND INSURANCE | 28 |
| XVIII. | FORCE MAJEURE | 29 |
| XIX. | DISPUTE RESOLUTION | 31 |
| XX. | STIPULATED PENALTIES | 33 |
| XXI. | COVENANTS BY PLAINTIFF | 36 |
| XXII. | COVENANTS BY SETTLING DEFENDANTS and SETTLING FEDERAL AGENCY | 39 |
| XXIII. | EFFECT OF SETTLEMENT; CONTRIBUTION PROTECTION | 41 |
| XXIV. | ACCESS TO INFORMATION | 42 |
| XXV. | RETENTION OF RECORDS | 43 |
| XXVI. | NOTICES AND SUBMISSIONS | 44 |
| XXVII. | EFFECTIVE DATE | 45 |
| XXVIII. | RETENTION OF JURISDICTION | 46 |
| XXIX. | APPENDICES | 46 |
| XXX. | COMMUNITY RELATIONS | 46 |
| XXXI. | MODIFICATION | 46 |
| XXXII. | LODGING AND OPPORTUNITY FOR PUBLIC COMMENT | 47 |
| XXXIII. | SIGNATORIES/SERVICE | 47 |
| XXXIV. | FINAL JUDGMENT | 48 |

## I. BACKGROUND

A.      The United States of America ("United States"), on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), filed a complaint in this matter pursuant to Sections 106 and 107 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9606, 9607.

B.      The United States in its complaint seeks, inter alia: (1) reimbursement of costs incurred by EPA and the Department of Justice for response actions at the Hastings Ground Water Contamination Superfund Site ("Site"), North Landfill Subsite ("Subsite") in Hastings, Nebraska, together with accrued interest; and (2) performance of response work by the defendants at the Subsite consistent with the National Contingency Plan, 40 C.F.R. Part 300 (as amended) ("NCP").

C.      In accordance with the NCP and Section 121(f)(1)(F) of CERCLA, 42 U.S.C. § 9621(f)(1)(F), EPA notified the State of Nebraska (the "State") on July 31, 2006, of negotiations with potentially responsible parties regarding the implementation of the final remedial design and remedial action for the North Landfill Subsite, and EPA has provided the State with an opportunity to participate in such negotiations and be a party to this Consent Decree.  The State has participated in these negotiations.

D.      In accordance with Section 122(j)(1) of CERCLA, 42 U.S.C. § 9622(j)(1), EPA notified the U. S. Department of Interior on July 31, 2006, of negotiations with potentially responsible parties regarding the release of hazardous substances that may have resulted in injury to the natural resources under Federal trusteeship and encouraged the trustee(s) to participate in the negotiation of this Consent Decree.  The Federal Trustee has declined to participate in the negotiation of this Consent Decree and provided its response in a letter that is attached hereto as Appendix H.

E.      The defendants that have entered into this Consent Decree ("Settling Defendants") do not admit any liability to the Plaintiff arising out of the transactions or occurrences alleged in the complaint, nor do they acknowledge that the release or threatened release of hazardous substance(s) at or from the Subsite constitutes an imminent or substantial endangerment to the public health or welfare or the environment.  The Settling Federal Agency does not admit any liability arising out of any transactions or occurrences that may be alleged in any counterclaim asserted by Settling Defendants.

F.      Pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, EPA placed the Site on the National Priorities List, set forth at 40 C.F.R. Part 300, Appendix B, by publication in the Federal Register on June 10, 1986, 51 Fed. Reg. 21054.

G.      In response to a release or a substantial threat of a release of a hazardous substances at or from the Subsite, EPA commenced a Remedial Investigation Study ("RI") for the Subsite pursuant to 40 C.F.R. § 300.430.  EPA published the results of its investigation in the "Report of Investigations Hastings Ground Water Contamination Site Hastings, Nebraska North Landfill Subsite", dated February 18, 1987.

*RD/RA Consent Decree          U.S. v. City of Hastings, Dravo Corporation, and Dutton-Lainson Company*

H.     The City of Hastings ("City") completed the investigation initiated by EPA and prepared the Remedial Investigation Report in January 1991. EPA published an Addendum to the Remedial Investigation Report in February 1991. The City prepared the Feasibility Study ("FS") for an interim action in July 1991. Based on the RI/FS, EPA issued an Interim Action Record of Decision, executed on September 30, 1991, for the source control and ground water operable units.

I.     The United States District Court for the District of Nebraska entered a Consent Decree with EPA and the North Landfill Subsite Settling Defendants, Civil Action No. 8:98CV265, on August 13, 1998 ("1998 Consent Decree"). Pursuant to the 1998 Consent Decree, Settling Defendants implemented the interim remedial action for the source control operable unit ("OU 10") at the Subsite and filed an Environmental Protection Easement and Declaration of Restrictive Covenant (Appendix E) through which the owner of the Subsite property granted a permanent right of access to EPA, the State, the City and Dutton-Lainson Company to perform environmental response actions on the Subsite property and restricted the use of the Subsite property.

J.     Between 1991 and 2002, potentially responsible parties at the FAR-MAR-CO Subsite, located adjacent and downgradient of the North Landfill Subsite, began performing a ground water response action to address the FAR-MAR-CO ground water plume. In December 2002, ground water analytical data collected during this activity was presented to EPA in the "Five Year Evaluation Report of the Performance of Well D, FAR-MAR-CO Subsite, Ground Water Operable Unit #OU 06 Hastings Ground Water Contamination Site Adams County, Nebraska" ("Well D Report"). The Well D Report provided information about the nature and extent of the North Landfill plume as well as the FAR-MAR-CO plume.

K.     Settling Defendants entered into an Administrative Order on Consent ("Consent Order") with EPA, CERCLA Docket No. 07-2004-0183, effective October 4, 2004. The Consent Order required the Settling Defendants to perform a Feasibility Study for a Final Subsite Action at the Subsite (OU 2). Settling Defendants relied on information compiled in the 1991 RI, the Addendum to the 1991 RI, and the Well D Report. EPA approved the FS for a Final Subsite Action for OU 2 in March 2006.

L.     The United States District Court for the District of Nebraska entered a Consent Decree with EPA and the Hastings Area-Wide Settling Defendants, Civil Action No. 8:03CV531, on February 26, 2004 ("Area-Wide Consent Decree"), which required, among other things, that the Area-Wide Settling Defendants cooperate with the City of Hastings in implementing Ordinance 3754 which restricts ground water use within an area that includes the North Landfill Subsite and the OU 2 plume.

M.     Pursuant to Section 117 of CERCLA, 42 U.S.C. § 9617, EPA published notice of the completion of the FS for a Final Subsite Action for OU 2 and of the proposed plan for a final remedial action on April 11, 2006, in *The Hastings Tribune*. EPA provided an opportunity for written and oral comments from the public on the proposed plan for remedial action. A copy of the transcript of the public meeting is available to the public as part of the administrative record upon which the Regional Administrator based the selection of the response action.

N.     The decision by EPA on the final remedial action to be implemented at OU 2 of the Subsite is embodied in a final ROD, executed on August 25, 2006, on which the State has given its concurrence.  The ROD includes a responsiveness summary to the public comments.  Notice of the final plan was published in accordance with Section 117(b) of CERCLA.

O.     Based on the information presently available to EPA, EPA believes that the Work will be properly and promptly conducted by the Settling Defendants if conducted in accordance with the requirements of this Consent Decree and its appendices.

P.     Solely for the purposes of Section 113(j) of CERCLA, the Final Remedial Action selected by the ROD and the Work to be performed by the Settling Defendants shall constitute a response action taken or ordered by the President.

Q.     The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and implementation of this Consent Decree will expedite the cleanup of the Subsite and will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, it is hereby Ordered, Adjudged, and Decreed:

## II. JURISDICTION

1.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. §§ 9606, 9607, and 9613(b).  This Court also has personal jurisdiction over the Settling Defendants.  Solely for the purposes of this Consent Decree and the underlying complaint, Settling Defendants waive all objections and defenses that they may have to jurisdiction of the Court or to venue in this District.  Settling Defendants shall not challenge the terms of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

## III. PARTIES BOUND

2.     This Consent Decree applies to and is binding upon the United States and upon Settling Defendants and their successors and assigns.  Any change in ownership or corporate status of a Settling Defendant including, but not limited to, any transfer of assets or real or personal property, shall in no way alter such Settling Defendant's responsibilities under this Consent Decree.

3.     Settling Defendants shall provide a copy of this Consent Decree to each contractor hired to perform the Work (as defined below) required by this Consent Decree and to each person representing any Settling Defendant with respect to the Subsite or the Work and shall condition all contracts entered into hereunder upon performance of the Work in conformity with the terms of this Consent Decree.  Settling Defendants or their contractors shall provide written notice of the Consent Decree to all subcontractors hired to perform any portion of the Work required by this Consent Decree.  Settling Defendants shall nonetheless be responsible for ensuring that their contractors and subcontractors perform the Work contemplated herein in accordance with this Consent Decree.  With regard to the activities undertaken pursuant to this Consent Decree, each contractor and subcontractor shall be deemed to be in a contractual

relationship with the Settling Defendants within the meaning of Section 107(b)(3) of CERCLA, 42 U.S.C. § 9607(b)(3).

## IV. DEFINITIONS

4.      Unless otherwise expressly provided herein, terms used in this Consent Decree which are defined in CERCLA or in regulations promulgated under CERCLA shall have the meaning assigned to them in CERCLA or in such regulations.  Whenever terms listed below are used in this Consent Decree or in the appendices attached hereto and incorporated hereunder, the following definitions shall apply:

"1998 Consent Decree" shall mean the Consent Decree entered by the U. S. District Court for the District of Nebraska, Civil Action No. 8:98CV265, on August 13, 1998, concerning an interim remedial action for the source control operable unit at the North Landfill Subsite.

"Area-Wide Consent Decree" shall mean the Consent Decree entered by the U. S. District Court for the District of Nebraska, Civil Action No. 8:03CV531, on February 26, 2004, concerning Operable Unit 19 of the Hastings Ground Water Contamination Site.

"CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601, *et seq*.

"Contaminants of Concern" or ("COCs") shall mean trichloroethene, Cis-1,2-Dichloroethene, and vinyl chloride.

"Consent Decree" shall mean this Decree and all appendices attached hereto (listed in Section XXIX).  In the event of conflict between this Decree and any appendix, this Decree shall control.

"Day" shall mean a calendar day unless expressly stated to be a working day.  "Working day" shall mean a day other than a Saturday, Sunday, or Federal holiday.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or Federal holiday, the period shall run until the close of business of the next working day.

"Effective Date" shall be the effective date of this Consent Decree as provided in Paragraph 111.

"EPA" shall mean the United States Environmental Protection Agency and any successor departments or agencies of the United States.

"Future Oversight Costs" shall mean that portion of Future Response Costs that EPA incurs in monitoring and supervising Settling Defendants' performance of the Work to determine whether such performance is consistent with the requirements of this Consent Decree, including costs incurred in reviewing plans, reports and other documents submitted pursuant to this Consent Decree, as well as costs incurred in overseeing implementation of the Work; however, Oversight Costs do not include, *inter alia*:  the costs incurred by the United States pursuant to Sections VII. (Remedy Review), IX. (Access), XV. (Emergency Response), and Paragraph 91. of Section XXI. (Work Takeover), or the costs incurred by the United States in enforcing the terms of this Consent Decree, including all costs incurred in connection with Dispute Resolution pursuant to Section XIX. (Dispute Resolution) and all litigation costs.

"Future Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs, that the United States incurs in reviewing or developing plans, reports and other items pursuant to this Consent Decree, verifying the Work, or otherwise implementing, overseeing, or enforcing this Consent Decree, including, but not limited to, payroll costs, contractor costs, travel costs, laboratory costs, the costs incurred pursuant to Sections VII., IX. (including, but not limited to, the cost of attorney time and any monies paid to secure access including, but not limited to, the amount of just compensation), XV., and Paragraph 91. of Section XXI. Future Response Costs shall also include all Interim Response Costs, and all Interest on those Interim Response Costs.

"Interim Response Costs" shall mean all costs, including direct and indirect costs, (a) paid by the United States in connection with the development of the final remedial action for OU 2 between November 1, 2006 and the Effective Date, or (b) incurred by the United States in connection with the development of the final remedial action for OU 2 prior to the Effective Date but paid after that date.

"Interest," shall mean interest at the rate specified for interest on investments of the EPA Hazardous Substance Superfund established by 26 U.S.C. § 9507, compounded annually on October 1 of each year, in accordance with 42 U.S.C. § 9607(a). The applicable rate of interest shall be the rate in effect at the time the interest accrues. The rate of interest is subject to change on October 1 of each year.

"Maximum Contaminant Levels" or "MCLs" shall mean the levels established under the Safe Drinking Water Act, 42 U.S.C. § 300g-1, for contaminants present in public drinking water systems.

"National Contingency Plan" or "NCP" shall mean the National Oil and Hazardous Substances Pollution Contingency Plan promulgated pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, codified at 40 C.F.R. Part 300, and any amendments thereto.

"NDEQ" shall mean the Nebraska Department of Environmental Quality and any successor departments or agencies of the State.

"Operation and Maintenance" or "O & M" shall mean all activities required to maintain the effectiveness of the Remedial Action for the final remedial action for OU 2, as required under the Operation and Maintenance Plan approved or developed by EPA pursuant to this Consent Decree and the Statement of Work (SOW)

"Operable Unit 2 or "OU 2" shall mean the ground water plume that emanates from the Subsite and is characterized by the presence of trichloroethene, Cis-1,2-Dichloroethene, and vinyl chloride at levels that exceed MCLs, as measured in wells including but not limited to those listed in Appendix C.

"Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral or an upper case letter.

"Parties" shall mean the United States and the Settling Defendants.

"Past Response Costs" shall mean all unreimbursed costs, including, but not limited to, direct and indirect costs, that the United States paid at or in connection with the final remedial

action for OU 2 through October 31, 2006, plus Interest on all such costs which has accrued pursuant to 42 U.S.C. § 9607(a) through July 31, 2007.

"Performance Standards" shall mean the cleanup standards and other measures of achievement of the goals of the Remedial Action, set forth in Section VIII. of the ROD and Section II. of the SOW.

"Plaintiff" shall mean the United States.

"RCRA" shall mean the Solid Waste Disposal Act, as amended, 42 U.S.C. §§ 6901 *et seq.* (also known as the Resource Conservation and Recovery Act).

"Record of Decision" or "ROD" shall mean the EPA Record of Decision relating to the Hastings Ground Water Contamination Site, North Landfill Subsite, Operable Unit 2, signed on August 25, 2006, by the Regional Administrator, EPA Region VII, or his delegate, and all attachments thereto.  The ROD is attached as Appendix A.

"Remedial Action" shall mean those activities, except for Operation and Maintenance, to be undertaken by the Settling Defendants to implement the ROD, in accordance with the SOW and the final Remedial Design/Remedial Action Work Plan and other plans approved by EPA.

"Remedial Design/Remedial Action Work Plan" shall mean the document developed pursuant to Paragraph 11. of this Consent Decree and approved by EPA, and any amendments thereto.

"Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

"Settling Defendants" shall mean those Parties identified in Appendix D.

"Settling Federal Agency" shall mean the United States Department of the Navy and any successor departments or agencies.

"Settling Defendants' Response Costs" shall mean all response costs incurred by Settling Defendants in implementing the Work required by this Consent Decree.

"Site" shall mean the Hastings Ground Water Contamination Superfund Site, located in and around Hastings, Adams County, Nebraska, and depicted generally on the map attached as Appendix C.

"State"shall mean the State Nebraska.

"Statement of Work" or "SOW" shall mean the statement of work for implementation of the Remedial Design/Remedial Action, and Operation and Maintenance at the Subsite, as set forth in Appendix B to this Consent Decree and any modifications made in accordance with this Consent Decree.

"Subsite" shall mean the North Landfill Subsite, located east of the eastern city limit of Hastings, Nebraska between the Burlington Northern Santa Fe Railway and Highway 6 in Adams County, and depicted generally on the map attached as Appendix C.

"Supervising Contractor" shall mean the principal contractor retained by the Settling Defendants to supervise and direct the implementation of the Work under this Consent Decree.

"United States" shall mean the United States of America, including all of its departments, agencies, and instrumentalities, which includes without limitation, EPA, the Settling Federal Agency, and the federal natural resources trustee.

"Waste Material" shall mean (1) any "hazardous substance" under Section 101(14) of CERCLA, 42 U.S.C. § 9601(14) and (2) any pollutant or contaminant under Section 101(33), 42 U.S.C. § 9601(33).

"Work" shall mean all activities Settling Defendants are required to perform under this Consent Decree, including modifications required pursuant to Paragraph 14., except those required by Section XXV (Retention of Records).

### V. GENERAL PROVISIONS

5.     Objectives of the Parties.  The objectives of the Parties in entering into this Consent Decree are to protect public health or welfare or the environment at the Subsite by the design and implementation of response actions at the Subsite by the Settling Defendants, to reimburse response costs of the Plaintiff, to resolve the claims of Plaintiff against Settling Defendants and the claims of the Settling Defendants which have been or could have been asserted against the United States with regard to this Subsite as provided in this Consent Decree. The objectives also are to provide Settling Defendants and the Settling Federal Agency with contribution protection pursuant to Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), as set forth in Paragraph 99. herein.

6.     Commitments by Settling Defendants and Settling Federal Agency.

        a..   Settling Defendants shall finance and perform the Work in accordance with this Consent Decree, the ROD, the SOW, and all Work Plans and other plans, standards, specifications, and schedules set forth herein or developed by Settling Defendants and approved by EPA pursuant to this Consent Decree.  The United States, on behalf of the Settling Federal Agency, will contribute to the financing of the Work pursuant to 58.  Settling Defendants and the United States, on behalf of the Settling Federal Agency, shall also reimburse the Hazardous Substance Trust Fund for Past Response Costs and Future Response as provided in this Consent Decree.

        b.   The obligations of Settling Defendants to finance and perform the Work and to pay amounts owed the United States under this Consent Decree are joint and several.  In the event of the insolvency or other failure of any one or more Settling Defendants to implement the requirements of this Consent Decree, the remaining Settling Defendants shall complete all such requirements.

7.     Compliance With Applicable Law.  All activities undertaken by Settling Defendants pursuant to this Consent Decree shall be performed in accordance with the requirements of all applicable Federal and state laws and regulations.  Settling Defendants must also comply with all applicable or relevant and appropriate requirements of all Federal and state environmental laws as set forth in the ROD and the SOW.  The activities conducted pursuant to this Consent Decree, if approved by EPA, shall be considered to be consistent with the NCP.

8.   Permits.

a.    As provided in Section 121(e) of CERCLA and Section 300.400(e) of the NCP, no permit shall be required for any portion of the Work conducted entirely on-site (i.e., within the areal extent of contamination or in very close proximity to the contamination and necessary for implementation of the Work).  Where any portion of the Work that is not on-site requires a Federal or state permit or approval, Settling Defendants shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals.

b.    The Settling Defendants may seek relief under the provisions of Section XVIII. (Force Majeure) of this Consent Decree for any delay in the performance of the Work resulting from a failure to obtain, or a delay in obtaining, any permit required for the Work.

c.    This Consent Decree is not, and shall not be construed to be, a permit issued pursuant to any federal or state statute or regulation.

9.   Notice to Successor-in-Title.  Pursuant to the 1998 Consent Decree, the owner of the Subsite filed with the Adams County Register of Deeds, an Environmental Protection Easement and Declaration of Restrictive Covenant on November 29, 2000 (Appendix E), which (a) provides notice to all Successors-in-Title that the Subsite property is subject to environmental use restrictions and (b) grants a permanent and continuing right of access to the Grantees who are two of the Settling Defendants in this Consent Decree.

**VI. PERFORMANCE OF THE WORK BY SETTLING DEFENDANTS**

10.   Selection of Supervising Contractor.

a.    All aspects of the Work to be performed by Settling Defendants pursuant to Sections VI. (Performance of the Work by Settling Defendants), VII. (Remedy Review), VIII. (Quality Assurance, Sampling and Data Analysis), and XV. (Emergency Response) of this Consent Decree shall be under the direction and supervision of the Supervising Contractor, the selection of which shall be subject to disapproval by EPA.  The initial Supervising Contractor for Settling Defendants shall be Jack Kratzmeyer.  Within 10 days after the lodging of this Consent Decree, Settling Defendants shall notify EPA in writing of the name, title, and qualifications of any contractor proposed to be the Supervising Contractor.  Prior to Mr. Kratzmeyer's performance of duties as a Supervising Contractor, he must receive from EPA a notice of disapproval or an authorization to proceed.  If at any time thereafter, Settling Defendants propose to change their Supervising Contractor, Settling Defendants shall give such notice to EPA and must obtain an authorization to proceed from EPA, before the new Supervising Contractor performs, directs, or supervises any Work under this Consent Decree.  Settling Defendants shall demonstrate to EPA that the proposed contractor has a quality system that complies with ANSI/ASQC E4-1994, "Specifications and Guidelines for Quality Systems for Environmental Data Collection and Environmental Technology Programs," (American National Standard, January 5, 1995), by submitting a copy of the proposed contractor's Quality Management Plan (QMP).  The QMP should be prepared in accordance with "EPA Requirements for Quality

Management Plans (QA/R-2)" (EPA/240/B-01/002, March 2001) or equivalent documentation as determined by EPA.

b.    If EPA disapproves a proposed Supervising Contractor, EPA will notify Settling Defendants in writing. Settling Defendants shall submit to EPA a list of contractors, including the qualifications of each contractor, that would be acceptable to them within 30 days of receipt of EPA's disapproval of the contractor previously proposed. EPA will provide written notice of the names of any contractor(s) that it disapproves and an authorization to proceed with respect to any of the other contractors. Settling Defendants may select any contractor from that list that is not disapproved and shall notify EPA of the name of the contractor selected within 21 days of EPA's authorization to proceed.

c.    If EPA fails to provide written notice of its authorization to proceed or disapproval as provided in this Paragraph and this failure prevents the Settling Defendants from meeting one or more deadlines in a plan approved by the EPA pursuant to this Consent Decree, Settling Defendants may seek relief under the provisions of Section XVIII. (Force Majeure) hereof.

11.    <u>Remedial Design/Remedial Action Work Plan.</u>

a.    Within 30 days after EPA's issuance of an authorization to proceed pursuant to Paragraph 10., Settling Defendants shall submit to EPA and the State a Work Plan for the Remedial Design/Remedial Action at the Subsite ("RD/RA Work Plan"). The RD/RA Work Plan shall provide for design and implementation of the remedy set forth in the ROD, in accordance with Section III. of the SOW, and for achievement of the Performance Standards and other requirements set forth in the ROD, this Consent Decree and/or the SOW. Upon its approval by EPA, the RD/RA Work Plan shall be incorporated into and become enforceable under this Consent Decree. Within 30 days after EPA's issuance of an authorization to proceed, Settling Defendants shall submit to EPA and the State a Health and Safety Plan for field activities required by the RD/RA Work Plan which includes the provisions described in Section VII. of the SOW and conforms to the applicable Occupational Safety and Health Administration and EPA requirements including, but not limited to, 29 C.F.R. § 1910.120.

b.    The RD/RA Work Plan shall include plans and schedules for implementation of all Remedial Design/Remedial Action identified in the SOW, including, but not limited to, plans and schedules for the completion of a: (1) ground water monitoring plan that includes a Quality Assurance Project Plan, more specifically described in Section VII. of the SOW, and identifies, among other things, sampling locations, frequency, analytical parameters and methodology in accordance with Section VIII. (Quality Assurance, Sampling and Data Analysis); (2) methods for satisfying permitting requirements; (3) methodology for implementation of the Operation and Maintenance Plan; (4) methodology for implementation of the Contingency Plan; and (5) procedures and plans for the decontamination of equipment and the disposal of contaminated materials. The RD/RA Work Plan also shall include the schedule for implementation of all Remedial Action tasks and shall identify the initial formulation of the Settling Defendants' Remedial Action Project Team (including, but not limited to, the Supervising Contractor). Upon approval of the RD/RA Work Plan, Settling Defendants shall submit to EPA and the State all plans, submissions, or other deliverables required under the

approved RD/RA Work Plan in accordance with the approved schedule for review and approval pursuant to Section XI. (EPA Approval of Plans and Other Submissions).

   c. Within 90 days of approval of the RD/RA Work Plan, Settling Defendants shall submit an O & M Plan as described in Section IV. of the SOW.

  12. <u>Remedial Action</u>.

   Upon approval of the RD/RA Work Plan, Settling Defendants shall implement the approved RD/RA Work Plan in accordance with the schedule set forth therein.   Unless otherwise directed by EPA, Settling Defendants shall not commence physical Remedial Action activities at the Subsite prior to approval of the RD/RA Work Plan.

  13. The Settling Defendants shall implement the Remedial Action and O&M until the Performance Standards are achieved.  Performance Standards shall be deemed to have been achieved on the earlier of (a) September 30, 2017, consistent with the assumptions set forth in Section I.C. of the SOW or (b) the date Settling Defendants can show that MCLs have been achieved for the COCs consistently for the OU 2 plume for least one year.

  14. <u>Modification of the SOW or Related Work Plans</u>.

   a. If EPA determines that modification to the Work specified in the SOW and/or in the approved RD/RA Work Plan or related Work Plans developed pursuant to the SOW is necessary to achieve Performance Standards and to maintain Performance Standards or to carry out and maintain the effectiveness of the remedy set forth in the ROD, EPA may require that such modification be incorporated in the SOW and/or such Work Plans, provided, however, that a modification may only be required pursuant to this Paragraph to the extent that it is consistent with the scope of the remedy selected in the ROD.

   b. For the purposes of this Paragraph 14. and Paragraphs 50.a. and 51.a. only, the "scope of remedy" means the (1) operation of a ground water extraction and treatment system until Performance Standards have been achieved as described in Paragraph 13 above, (2) and monitoring of wells, including, but not limited, to the wells listed in Attachment 1 to the SOW, to measure and track the concentration levels and the degradation rate of the COCs in OU 2.

   c. If Settling Defendants object to any modification determined by EPA to be necessary pursuant to this Paragraph, they may seek dispute resolution pursuant to Section XIX. (Dispute Resolution), Paragraph 71. (record review).  The SOW and/or related Work Plans shall be modified in accordance with final resolution of the dispute.

   d. Settling Defendants shall implement any Work required by any modifications incorporated in the SOW and/or in Work Plans developed pursuant to the SOW in accordance with this Paragraph.

   e. Nothing in this Paragraph shall be construed to limit EPA's authority to require performance of further response actions as otherwise provided in this Consent Decree.

  15. Except as provided in Paragraph 13., Settling Defendants acknowledge and agree that nothing in this Consent Decree, the SOW, or the Remedial Design/Remedial Action Work

Plan constitutes a warranty or representation of any kind by Plaintiff that compliance with the work requirements set forth in the SOW and the Work Plans will achieve the Performance Standards.

16.      If a Modification is required, as described in Paragraph 14. above, which results in generation of Waste Material,

a.      Settling Defendants shall, prior to any shipment of Waste Material from the Subsite to an out-of-state waste management facility, provide written notification to the appropriate state environmental official in the receiving facility's state and to the EPA Project Coordinator of such shipment of Waste Material.  However, this notification requirement shall not apply to any shipments when the total volume of all such shipments will not exceed 10 cubic yards.

(1)      The Settling Defendants shall include in the written notification the following information, where available: (a) the name and location of the facility to which the Waste Material is to be shipped; (b) the type and quantity of the Waste Material to be shipped; (c) the expected schedule for the shipment of the Waste Material; and (d) the method of transportation.  The Settling Defendants shall notify the state in which the planned receiving facility is located of major changes in the shipment plan, such as a decision to ship the Waste Material to another facility within the same state, or to a facility in another state.

(2)      The identity of the receiving facility and state will be determined by the Settling Defendants following the award of the contract for Remedial Action construction. The Settling Defendants shall provide the information required by Paragraph 16.a. as soon as practicable after the award of the contract and before the Waste Material is actually shipped.

b.      Before shipping any hazardous substances, pollutants, or contaminants from the Subsite to an off-site location, Settling Defendants shall obtain EPA's certification that the proposed receiving facility is operating in compliance with the requirements of CERCLA Section 121(d)(3) and 40 C.F.R. § 300.440.  Settling Defendants shall only send hazardous substances, pollutants, or contaminants from the Subsite to an off-site facility that complies with the requirements of the statutory provision and regulations cited in the preceding sentence.

### VII. REMEDY REVIEW

17.      Periodic Review.  Settling Defendants shall conduct any studies and investigations as requested by EPA, in order to permit EPA to conduct reviews of whether the Remedial Action is protective of human health and the environment at least every five years as required by Section 121(c) of CERCLA and any applicable regulations.

18.      EPA Selection of Further Response Actions.  If EPA determines, at any time, that the Remedial Action is not protective of human health and the environment, EPA may select further response actions for the Subsite in accordance with the requirements of CERCLA, the NCP, and this Consent Decree.

19.    <u>Opportunity To Comment</u>.  Settling Defendants and, if required by Sections 113(k)(2) or 117 of CERCLA, the public, will be provided with an opportunity to comment on any further response actions proposed by EPA as a result of the review conducted pursuant to Section 121(c) of CERCLA and to submit written comments for the record during the comment period  .

20.    <u>Settling Defendants' Obligation To Perform Further Response Actions</u>.  If EPA selects further response actions for the Subsite, the Settling Defendants shall undertake such further response actions to the extent that the reopener conditions in Paragraph 87. or 88. (United States' reservations of liability based on unknown conditions or new information) are satisfied. Settling Defendants may invoke the procedures set forth in Section XIX. (Dispute Resolution) to dispute (1) EPA's determination that the reopener conditions of Paragraph 87. or Paragraph 88. of Section XXI. (Covenants Not To Sue by Plaintiff) are satisfied, (2) EPA's determination that the Remedial Action is not protective of human health and the environment, or (3) EPA's selection of the further response actions.  Disputes pertaining to the whether the Remedial Action is protective or to EPA's selection of further response actions shall be resolved pursuant to Paragraph 71. (record review).

21.    <u>Submissions of Plans</u>.  If Settling Defendants are required to perform the further response actions pursuant to Paragraph 20., they shall submit a plan for such work to EPA for approval in accordance with the procedures set forth in Section VI. (Performance of the Work by Settling Defendants) and shall implement the plan approved by EPA in accordance with the provisions of this Decree.

**VIII.  QUALITY ASSURANCE, SAMPLING, AND DATA ANALYSIS**

22.    Settling Defendants shall use quality assurance, quality control, and chain of custody procedures for all samples in accordance with "EPA Requirements for Quality Assurance Project Plans (QA/R5)" (EPA/240/B-01/003, March 2001) "Guidance for Quality Assurance Project Plans (QA/G-5)" (EPA/240/R-02/009, December 2002), and subsequent amendments to such guidelines upon notification by EPA to Settling Defendants of such amendment.  Amended guidelines shall apply only to procedures conducted after such notification.  Prior to the commencement of any monitoring project under this Consent Decree, Settling Defendants shall submit to EPA for approval, after a reasonable opportunity for review and comment by the State, a Quality Assurance Project Plan ("QAPP") that is consistent with the SOW, the NCP and applicable guidance documents.  If relevant to the proceeding, the Parties agree that validated sampling data generated in accordance with the QAPP(s) and reviewed and approved by EPA shall be admissible as evidence, without objection, in any proceeding under this Decree.  Settling Defendants shall ensure that EPA personnel and its authorized representatives are allowed access at reasonable times to all laboratories utilized by Settling Defendants in implementing this Consent Decree.  In addition, Settling Defendants shall ensure that such laboratories shall analyze all samples submitted by EPA pursuant to the QAPP for quality assurance monitoring.  Settling Defendants shall ensure that the laboratories they utilize for the analysis of samples taken pursuant to this Decree perform all analyses according to accepted EPA methods.  Accepted EPA methods consist of those methods which are documented in the "Contract Lab Program Statement of Work for Inorganic Analysis" and the "Contract Lab Program Statement of Work for Organic Analysis," dated February 1988, and any amendments

made thereto during the course of the implementation of this Decree; however, upon approval by EPA, after opportunity for review and comment by the State, the Settling Defendants may use other analytical methods which are as stringent as or more stringent than the CLP- approved methods.  Settling Defendants shall ensure that all laboratories they use for analysis of samples taken pursuant to this Consent Decree participate in an EPA or EPA-equivalent QA/QC program.  Settling Defendants shall only use laboratories that have a documented Quality System which complies with ANSI/ASQC E4-1994, "Specifications and Guidelines for Quality Systems for Environmental Data Collection and Environmental Technology Programs," (American National Standard, January 5, 1995), and "EPA Requirements for Quality Management Plans (QA/R-2)," (EPA/240/B-01/002, March 2001) or equivalent documentation as determined by EPA.  EPA may consider laboratories accredited under the National Environmental Laboratory Accreditation Program (NELAP) as meeting the Quality System requirements.  Settling Defendants shall ensure that all field methodologies utilized in collecting samples for subsequent analysis pursuant to this Decree will be conducted in accordance with the procedures set forth in the QAPP approved by EPA.

23.    Upon request, the Settling Defendants shall allow split or duplicate samples to be taken by EPA and the State or their authorized representatives.  Settling Defendants shall notify EPA and the State not less than 28 days in advance of any sample collection activity unless shorter notice is agreed to by EPA.  In addition, EPA and the State shall have the right to take any additional samples that EPA or the State deems necessary.  Upon request, EPA and the State shall allow the Settling Defendants to take split or duplicate samples of any samples they take as part of the Plaintiff's oversight of the Settling Defendants' implementation of the Work.

24.    Settling Defendants shall submit to EPA two copies and to the State two copies of the results of all sampling and/or tests or other data obtained or generated by or on behalf of Settling Defendants with respect to the Subsite and/or the implementation of this Consent Decree unless EPA agrees otherwise.

25.    Notwithstanding any provision of this Consent Decree, the United States hereby retains all of its information gathering and inspection authorities and rights, including enforcement actions related thereto, under CERCLA, RCRA and any other applicable statutes or regulations.

**IX. ACCESS**

26.    If access is needed onto any property not included in the Environmental Easement and Restrictive Covenant (Appendix E) in order to implement Work under this Consent Decree, within 45 days of a request by EPA, Settling Defendants shall use best efforts to secure from such property owners an agreement to provide access thereto for Settling Defendants, as well as for the United States on behalf of EPA, and the State, as well as their representatives (including contractors), for the purpose of conducting any activity related to this Consent Decree including, but not limited to, the following activities:

a.    Monitoring the Work;

b.    Verifying any data or information submitted to the United States or the State;

      c.      Conducting investigations relating to contamination at or near the Subsite;

      d.      Obtaining samples;

      e.      Assessing the need for, planning, or implementing additional response actions at or near the Subsite;

      f.      Assessing implementation of quality assurance and quality control practices as defined in the approved Quality Assurance Project Plans;

      g.      Implementing the Work pursuant to the conditions set forth in Paragraph 91. of this Consent Decree;

      h      Assessing Settling Defendants' compliance with this Consent Decree; and

      i.      Determining whether the Subsite or other property is being used in a manner that is prohibited or restricted, or that may need to be prohibited or restricted, by or pursuant to this Consent Decree.

27.      The Parties acknowledge that institutional controls are in place as a requirement of the Area-Wide Consent Decree referenced in Paragraph L of Section I (Background), and provide protection to the public from exposure to contaminated ground water emanating from the Site, including the Subsite.  The Settling Defendants shall not interfere with the institutional controls so long as they are a requirement under the Area-Wide Consent Decree.

28.      For purposes of Paragraphs 26. of this Consent Decree, "best efforts" includes the payment of reasonable sums of money in consideration of access, access easements, land/water use restrictions, restrictive easements, and/or an agreement to release or subordinate a prior lien or encumbrance.  If any access agreement required by Paragraph 26. of this Consent Decree is not obtained within 45 days of a request by EPA, Settling Defendants shall promptly notify the United States in writing, and shall include in that notification a summary of the steps that Settling Defendants have taken to attempt to comply with Paragraph 26. of this Consent Decree. The United States may, as it deems appropriate, assist Settling Defendants in obtaining access or land/water use restrictions, either in the form of contractual agreements or in the form of easements running with the land, or in obtaining the release or subordination of a prior lien or encumbrance.  Settling Defendants shall reimburse the United States in accordance with the procedures in Section XVI. (Reimbursement of Response Costs), for all costs incurred, direct or indirect, by the United States in obtaining such access, land/water use restrictions, and/or the release/subordination of prior liens or encumbrances including, but not limited to, the cost of attorney time and the amount of monetary consideration paid or just compensation.

29.      Notwithstanding any provision of this Consent Decree, the United States retains all of its access authorities and rights, as well as all of its rights to require land/water use restrictions, including enforcement authorities related thereto, under CERCLA, RCRA and any other applicable statute or regulations.

## X. Reporting Requirements

30.      In addition to any other requirement of this Consent Decree, Settling Defendants shall submit in writing to EPA two copies and the State two copies of (a) monthly progress reports beginning on the 10th day of the first month following the Effective Date for 12 months;

(b) sampling data four times a year beginning on the 10th day of the third month after ground water sampling is initiated and continuing until otherwise notified by EPA; and (c) annual progress reports which include data evaluation, beginning 13 months after ground water sampling is initiated and continuing until otherwise notified by EPA. The progress reports shall: (a) describe the actions which have been taken toward achieving compliance with this Consent Decree during the previous reporting period; (b) include a summary of all results of sampling and tests and all other data received or generated by Settling Defendants or their contractors or agents in the previous reporting period; (c) identify all plans and other deliverables required by this Consent Decree completed and submitted during the previous reporting period; (d) describe all actions, including, but not limited to, data collection and implementation of the RD/RA Work Plan and related plans, which are scheduled for the next six weeks; (e) include information regarding percentage of completion, unresolved delays encountered or anticipated that may affect the future schedule for implementation of the Work, and a description of efforts made to mitigate those delays or anticipated delays; (f) include any modifications to the RD/RA Work Plan and/or related plans or other schedules that Settling Defendants have proposed to EPA or that have been approved by EPA; and (g) describe all activities undertaken in support of the Community Relations Plan during the previous reporting period and those to be undertaken in the next reporting period. Settling Defendants shall submit these progress reports to EPA and the State by the tenth day of every month following the lodging of this Consent Decree, or different frequency as determined by EPA, until EPA notifies the Settling Defendants pursuant to Paragraph 51.b. of Section XIV. (Certification of Completion). If requested by EPA, Settling Defendants shall also provide briefings for EPA to discuss the progress of the Work.

31. The Settling Defendants shall notify EPA of any change in the schedule described in the progress report for the performance of any activity, including, but not limited to, data collection and implementation of Work Plans, no later than seven days prior to the performance of the activity.

32. Upon the occurrence of any event during performance of the Work that Settling Defendants are required to report pursuant to Section 103 of CERCLA or Section 304 of the Emergency Planning and Community Right-to-Know Act ("EPCRA"), Settling Defendants shall, within 24 hours of the onset of such event, orally notify the EPA Project Coordinator or the Alternate EPA Project Coordinator (in the event of the unavailability of the EPA Project Coordinator), or, in the event that neither the EPA Project Coordinator or Alternate EPA Project Coordinator is available, the Emergency Response Section, Region VII, United States Environmental Protection Agency. These reporting requirements are in addition to the reporting required by CERCLA Section 103 or EPCRA Section 304.

33. Within 20 days of the onset of such an event, Settling Defendants shall furnish to EPA, a written report, signed by the Settling Defendants' Project Coordinator, setting forth the events which occurred and the measures taken, and to be taken, in response thereto. Within 30 days of the conclusion of such an event, Settling Defendants shall submit a report setting forth all actions taken in response thereto.

34. Settling Defendants shall submit two copies to EPA and two copies to the State all plans,

*RD/RA Consent Decree*          *U.S. v. City of Hastings, Dravo Corporation, and Dutton-Lainson Company*

reports, and data required by the SOW, the RD/RA Work Plan, or any other approved plans to EPA in accordance with the schedules set forth in such plans. Upon request by EPA, Settling Defendants shall submit in electronic form all portions of any report or other deliverable Settling Defendants are required to submit pursuant to the provisions of this Consent Decree.

35.     All reports and other documents submitted by Settling Defendants to EPA (other than the progress reports referred to above) which purport to document Settling Defendants' compliance with the terms of this Consent Decree shall be signed by an authorized representative of the Settling Defendants.

### XI. EPA APPROVAL OF PLANS AND OTHER SUBMISSIONS

36.     After review of any plan, report or other item which is required to be submitted for approval pursuant to this Consent Decree, EPA, after reasonable opportunity for review and comment by the State, shall: (a) approve, in whole or in part, the submission; (b) approve the submission upon specified conditions; (c) modify the submission to cure the deficiencies; (d) disapprove, in whole or in part, the submission, directing that the Settling Defendants modify the submission; or (e) any combination of the above. However, EPA shall not modify a submission without first providing Settling Defendants at least one notice of deficiency and an opportunity to cure within 10 days, except where to do so would cause serious disruption to the Work or where previous submission(s) have been disapproved due to material defects and the deficiencies in the submission under consideration indicate a bad faith lack of effort to submit an acceptable deliverable.

37.     In the event of approval, approval upon conditions, or modification by EPA, pursuant to Paragraph 36. (a), (b), or (c), Settling Defendants shall proceed to take any action required by the plan, report, or other item, as approved or modified by EPA subject only to their right to invoke the Dispute Resolution procedures set forth in Section XIX. (Dispute Resolution) with respect to the modifications or conditions made by EPA. In the event that EPA modifies the submission to cure the deficiencies pursuant to Paragraph 36. (c) and the submission has a material defect, EPA retains its right to seek stipulated penalties, as provided in Section XX. (Stipulated Penalties).

38.     Resubmission of Plans.

        a.     Upon receipt of a notice of disapproval pursuant to Paragraph 36. (d), Settling Defendants shall, within 10 days or such longer time as specified by EPA in such notice, correct the deficiencies and resubmit the plan, report, or other item for approval. Any stipulated penalties applicable to the submission, as provided in Section XX., shall accrue during the 10-day period or otherwise specified period but shall not be payable unless the resubmission is disapproved or modified due to a material defect as provided in Paragraphs 39. and 40.

        b.     Notwithstanding the receipt of a notice of disapproval pursuant to Paragraph 36. (d), Settling Defendants shall proceed, at the direction of EPA, to take any action required by any non-deficient portion of the submission. Implementation of any non-deficient portion of a submission shall not relieve Settling Defendants of any liability for stipulated penalties under Section XX. (Stipulated Penalties).

39.     In the event that a resubmitted plan, report or other item, or portion thereof, is

disapproved by EPA, EPA may again require the Settling Defendants to correct the deficiencies, in accordance with the preceding Paragraphs.  EPA also retains the right to modify or develop the plan, report or other item. Settling Defendants shall implement any such plan, report, or item as

modified or developed by EPA, subject only to their right to invoke the procedures set forth in Section XIX. (Dispute Resolution).

40.     If upon resubmission, a plan, report, or item is disapproved or modified by EPA due to a material defect, Settling Defendants shall be deemed to have failed to submit such plan, report, or item timely and adequately unless the Settling Defendants invoke the dispute resolution procedures set forth in Section XIX. (Dispute Resolution) and EPA's action is overturned pursuant to that Section.  The provisions of Section XIX. (Dispute Resolution) and Section XX. (Stipulated Penalties) shall govern the implementation of the Work and accrual and payment of any stipulated penalties during Dispute Resolution.  If EPA's disapproval or modification is upheld, stipulated penalties shall accrue for such violation from the date on which the initial submission was originally required, as provided in Section XX.

41.     All plans, reports, and other items required to be submitted to EPA under this Consent Decree shall, upon approval or modification by EPA, be enforceable under this Consent Decree.  In the event EPA approves or modifies a portion of a plan, report, or other item required to be submitted to EPA under this Consent Decree, the approved or modified portion shall be enforceable under this Consent Decree.

### XII. PROJECT COORDINATORS

42.     Settling Defendants' Project Coordinator shall be Mr. Dave Wacker and their alternate Project Coordinator shall be Mr. Jack Newlun.  EPA's Project Coordinator shall be Mr. William Gresham.  The names, addresses, and telephone numbers of the Project Coordinators and Alternate Project Coordinator appear in Paragraph 110 herein.  If a Project Coordinator or Alternate Project Coordinator initially designated is changed, the identity of the successor will be given to the other Parties at least five (5) working days before the changes occur, unless impracticable, but in no event later than the actual day the change is made.  The Settling Defendants' Project Coordinator shall be subject to disapproval by EPA and shall have the technical expertise sufficient to adequately oversee all aspects of the Work.  The Settling Defendants' Project Coordinator shall not be an attorney for any of the Settling Defendants in this matter.  He or she may assign other representatives, including other contractors, to serve as a Subsite representative for oversight of performance of daily operations during remedial activities.

43.     Plaintiff may designate other representatives, including, but not limited to, EPA employees, and Federal contractors and consultants, to observe and monitor the progress of any activity undertaken pursuant to this Consent Decree.  EPA's Project Coordinator and Alternate Project Coordinator shall have the authority lawfully vested in a Remedial Project Manager ("RPM") and an On-Scene Coordinator ("OSC") by the National Contingency Plan, 40 C.F.R. Part 300.  In addition, EPA's Project Coordinator or Alternate Project Coordinator shall have authority, consistent with the National Contingency Plan, to halt any Work required by this Consent Decree and to take any necessary response action when s/he determines that conditions

at the Site constitute an emergency situation or may present an immediate threat to public health or welfare or the environment due to release or threatened release of Waste Material.

### XIII.  PERFORMANCE GUARANTEE

44.    In order to ensure the full and final completion of the Work, Settling Defendants shall establish and maintain a Performance Guarantee for the benefit of EPA in the amount of $1,120,000 (hereinafter "Estimated Cost of the Work") in one or more of the following forms, which must be satisfactory in form and substance to EPA:

a.    A surety bond unconditionally guaranteeing payment and/or performance of the Work that is issued by a surety company among those listed as acceptable sureties on Federal bonds as set forth in Circular 570 of the U.S. Department of the Treasury;

b.    One or more irrevocable letters of credit, payable to or at the direction of EPA, that is issued by one or more financial institution(s) (i) that has the authority to issue letters of credit and (ii) whose letter-of-credit operations are regulated and examined by a U.S. Federal or State agency;

c.    A trust fund established for the benefit of EPA that is administered by a trustee (i) that has the authority to act as a trustee and (ii) whose trust operations are regulated and examined by a U.S. Federal or State agency;

d.    A policy of insurance that (i) provides EPA with acceptable rights as a beneficiary thereof; and (ii) is issued by an insurance carrier (a) that has the authority to issue insurance policies in the applicable jurisdiction(s) and (b) whose insurance operations are regulated and examined by a State agency;

e.    A demonstration by one or more Settling Defendants that each such Settling Defendant meets the financial test criteria of 40 C.F.R. § 264.143(f) with respect to the Estimated Cost of the Work, provided that all other requirements of 40 C.F.R. § 264.143(f) are satisfied; or

f.    A written guarantee to fund or perform the Work executed in favor of EPA by one or more of the following: (i) a direct or indirect parent company of a Settling Defendant, or (ii) a company that has a "substantial business relationship" (as defined in 40 C.F.R.          § 264.141(h)) with at least one Settling Defendant; provided, however, that any company providing such a guarantee must demonstrate to the satisfaction of EPA that it satisfies the financial test requirements of 40 C.F.R. § 264.143(f) with respect to the Estimated Cost of the Work that it proposes to guarantee hereunder.

g.    Settling Defendants may use one or more of the forms of Performance Guarantee provided herein with each Settling Defendant providing a portion of the Performance Guarantee, so long as the Performance Guarantee totals $1,120,000.

45.   Settling Defendants City of Hastings and Dutton-Lainson Company have selected, and EPA has approved, as a portion of the initial Performance Guarantee, Letters of Credit pursuant to Paragraph 44.b, in the form substantially identical to that attached hereto as Appendix F.  Settling Defendant Dravo Corporation has selected, and EPA has approved, as a portion of the initial Performance Guarantee, a demonstration that the parent of Dravo

Corporation meets the financial test  pursuant to Paragraph 44.e, in the form attached hereto as Appendix G.  Within thirty days after entry of this Consent Decree, Settling Defendants shall execute or otherwise finalize all instruments or other documents required in order to make the selected Performance Guarantees legally binding in a form substantially identical to the documents attached hereto as Appendices F and G, and such Performance Guarantees shall thereupon be fully effective.  Within thirty (30) days of entry of this Consent Decree, Settling Defendants shall submit all executed and/or otherwise finalized instruments or other documents required in order to make the selected Performance Guarantees legally binding to EPA in accordance with Section XXVI. (Notices and Submissions) of this Consent Decree and to the United States as specified in Section XXVI.

46.     If at any time during the effective period of this Consent Decree, the Settling Defendants provide a Performance Guarantee for completion of the Work by means of a demonstration or guarantee pursuant to Paragraph 44.e. or Paragraph 44.f. above, such Settling Defendant shall also comply with the other relevant requirements of 40 C.F.R. § 264.143(f), 40 C.F.R. § 264.151(f), and 40 C.F.R. § 264.151(h)(1) relating to these methods unless otherwise provided in this Consent Decree, including but not limited to (a) the initial submission of required financial reports and statements from the relevant entity's chief financial officer and independent certified public accountant; (b) the annual re-submission of such reports and statements within ninety days after the close of each such entity's fiscal year; and (c) the notification of EPA within ninety days after the close of any fiscal year in which such entity no longer satisfies the financial test requirements set forth at 40 C.F.R. § 264.143(f)(1).  For purposes of the Performance Guarantee methods specified in this Section XIII., references in 40 C.F.R. Part 264, Subpart H, to "closure," "post-closure," and "plugging and abandonment" shall be deemed to refer to the Work required under this Consent Decree, and the terms "current closure cost estimate" "current post-closure cost estimate," and "current plugging and abandonment cost estimate" shall be deemed to refer to the Estimated Cost of the Work.

47.     In the event that EPA determines at any time that a Performance Guarantee provided by any Settling Defendant pursuant to this Section is inadequate or otherwise no longer satisfies the requirements set forth in this Section, whether due to an increase in the estimated cost of completing the Work or for any other reason, or in the event that any Settling Defendant becomes aware of information indicating that a Performance Guarantee provided pursuant to this Section is inadequate or otherwise no longer satisfies the requirements set forth in this Section, whether due to an increase in the estimated cost of completing the Work or for any other reason, Settling Defendants, within thirty days of receipt of notice of EPA's determination or, as the case may be, within thirty days of any Settling Defendant becoming aware of such information, shall obtain and present to EPA for approval a proposal for a revised or alternative form of Performance Guarantee listed in Paragraph 44. of this Consent Decree that satisfies all requirements set forth in this Section XIII.  In seeking approval for a revised or alternative form of Performance Guarantee, Settling Defendants shall follow the procedures set forth in Paragraph 46. of this Consent Decree.  Settling Defendants' inability to post a Performance Guarantee for completion of the Work shall in no way excuse performance of any other requirements of this Consent Decree, including, without limitation, the obligation of Settling Defendants to complete the Work in strict accordance with the terms hereof.

48.     The commencement of any Work Takeover pursuant to Paragraph 91. of this Consent Decree shall trigger EPA's right to receive the benefit of any Performance Guarantees provided pursuant to Paragraph 44.a., b., c., d., or f. and at such time EPA shall have immediate access to resources guaranteed under any such Performance Guarantees, whether in cash or in kind, as needed to continue and complete the Work assumed by EPA under the Work Takeover. If for any reason EPA is unable to promptly secure the resources guaranteed under any such Performance Guarantees, whether in cash or in kind, necessary to continue and complete the Work assumed by EPA under the Work Takeover, or in the event that the Performance Guarantee involves a demonstration of satisfaction of the financial test criteria pursuant to Paragraph 44.e., Settling Defendants shall immediately upon written demand from EPA deposit into an account specified by EPA, in immediately available funds and without setoff, counterclaim, or condition of any kind, a cash amount up to but not exceeding the estimated cost of the remaining Work to be performed as of such date, as determined by EPA.

49.     Modification of Amount and/or Form of Performance Guarantee.

a.     Reduction of Amount of Performance Guarantee.  If Settling Defendants believe that the estimated cost to complete the remaining Work has diminished below the amount set forth in Paragraph 44. above, Settling Defendants may, on any anniversary date of entry of this Consent Decree, or at any other time agreed to by the Parties, petition EPA in writing to request a reduction in the amount of the Performance Guarantee provided pursuant to this Section so that the amount of the Performance Guarantee is equal to the estimated cost of the remaining Work to be performed.  Settling Defendants shall submit a written proposal for such reduction to EPA that shall specify, at a minimum, the cost of the remaining Work to be performed and the basis upon which such cost was calculated.  In seeking approval for a revised or alternative form of Performance Guarantee, Settling Defendants shall follow the procedures set forth in Paragraph 49.b.(2) of this Consent Decree.  If EPA decides to accept such a proposal, EPA shall notify the petitioning Settling Defendants of such decision in writing.  After receiving EPA's written acceptance, Settling Defendants may reduce the amount of the Performance Guarantee in accordance with and to the extent permitted by such written acceptance.  In the event of a dispute, Settling Defendants may reduce the amount of the Performance Guarantee required hereunder only in accordance with a final administrative or judicial decision resolving such dispute.  No change to the form or terms of any Performance Guarantee provided under this Section, other than a reduction in amount, is authorized except as provided in Paragraphs 47. or 49.b. of this Consent Decree.

b.     Change of Form of Performance Guarantee.

(1)     If, after entry of this Consent Decree, Settling Defendants desire to change the form or terms of any Performance Guarantees provided pursuant to this Section, Settling Defendants may, on any anniversary date of entry of this Consent Decree, or at any other time agreed to by the Parties, petition EPA in writing to request a change in the form of the Performance Guarantee provided hereunder.  The submission of such proposed revised or alternative form of Performance Guarantee shall be as provided in Paragraph 49.b. (2) of this Consent Decree.  Any decision made by EPA on a petition submitted under this subparagraph (b)(1) shall be made in EPA's sole and unreviewable discretion, and such decision shall not be subject to

20

challenge by Settling Defendants pursuant to the dispute resolution provisions of this Consent Decree or in any other forum.

(2)     Settling Defendants shall submit a written proposal for a revised or alternative form of Performance Guarantee to EPA which shall specify, at a minimum, the estimated cost of the remaining Work to be performed, the basis upon which such cost was calculated, and the proposed revised form of Performance Guarantee, including all proposed instruments or other documents required in order to make the proposed Performance Guarantee legally binding.  The proposed revised or alternative form of Performance Guarantee must satisfy all requirements set forth or incorporated by reference in this Section.  Settling Defendants shall submit such proposed revised or alternative form of Performance Guarantee to EPA in accordance with Section XXVI. (Notices and Submissions) of this Consent Decree.  EPA shall notify Settling Defendants in writing of its decision to accept or reject a revised or alternative Performance Guarantee submitted pursuant to this subparagraph.  Within ten days after receiving a written decision approving the proposed revised or alternative Performance Guarantee, Settling Defendants shall execute and/or otherwise finalize all instruments or other documents required in order to make the selected Performance Guarantee(s) legally binding in a form substantially identical to the documents submitted to EPA as part of the proposal, and such Performance Guarantee(s) shall thereupon be fully effective.  Settling Defendants shall submit all executed and/or otherwise finalized instruments or other documents required in order to make the selected Performance Guarantees legally binding to the EPA as specified in Section XXVI. within thirty days of receiving a written decision approving the proposed revised or alternative Performance Guarantee in accordance with Section XXVI. ("Notices and Submissions") of this Consent Decree.

c.     <u>Release of Performance Guarantee</u>.  If Settling Defendants receive written notice from EPA in accordance with Paragraph 51. hereof that the Work has been fully and finally completed in accordance with the terms of this Consent Decree, or if EPA otherwise so notifies Settling Defendants in writing, Settling Defendants may thereafter release, cancel, or discontinue the Performance Guarantees provided pursuant to this Section.  Settling Defendants shall not release, cancel, or discontinue any Performance Guarantee provided pursuant to this Section except as provided in this subparagraph.  In the event of a dispute, Settling Defendants may release, cancel, or discontinue the Performance Guarantees required hereunder only in accordance with a final administrative or judicial decision resolving such dispute.

**XIV.  <u>CERTIFICATION OF COMPLETION</u>**

50.     <u>Completion of the Remedial Action</u>.

a.     Within 90 days after Settling Defendants conclude that the Remedial Action has been fully performed and the Performance Standards have been attained, Settling Defendants shall schedule and conduct a pre-certification inspection to be attended by Settling Defendants and EPA.  If, after the pre-certification inspection, the Settling Defendants still believe that the Remedial Action has been fully performed and the Performance Standards have been attained,

they shall submit a written report requesting certification to EPA for approval, with a copy to the State, pursuant to Section XI. (EPA Approval of Plans and Other Submissions) within 30 days of the inspection.  In the report, a registered professional engineer and the Settling Defendants' Project Coordinator shall state that the Remedial Action has been completed in full satisfaction of the requirements of this Consent Decree.  The written report shall include as-built drawings signed and stamped by a professional engineer.  The report shall contain the following statement, signed by a responsible corporate official of a Settling Defendant or the Settling Defendants' Project Coordinator:

> To the best of my knowledge, after thorough investigation, I certify that the information contained in or accompanying this submission is true, accurate and complete.  I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

If, after completion of the pre-certification inspection and receipt and review of the written report, EPA, after reasonable opportunity to review and comment by the State, determines that the Remedial Action or any portion thereof has not been completed in accordance with this Consent Decree or that the Performance Standards have not been achieved, EPA will notify Settling Defendants in writing of the activities that must be undertaken by Settling Defendants pursuant to this Consent Decree to complete the Remedial Action and achieve the Performance Standards, provided, however, that EPA may only require Settling Defendants to perform such activities pursuant to this Paragraph to the extent that such activities are consistent with the "scope of the remedy selected in the ROD," as that term is defined in Paragraph 14.b.  EPA will set forth in the notice a schedule for performance of such activities consistent with the Consent Decree and the SOW or require the Settling Defendants to submit a schedule to EPA for approval pursuant to Section XI. (EPA Approval of Plans and Other Submissions).  Settling Defendants shall perform all activities described in the notice in accordance with the specifications and schedules established pursuant to this Paragraph, subject to their right to invoke the dispute resolution procedures set forth in Section XIX. (Dispute Resolution).

> b.     If EPA concludes, based on the initial or any subsequent report requesting Certification of Completion and after a reasonable opportunity for review and comment by the State, that the Remedial Action has been performed in accordance with this Consent Decree and that the Performance Standards have been achieved, EPA will so certify in writing to Settling Defendants.  This certification shall constitute the Certification of Completion of the Remedial Action for purposes of this Consent Decree, including, but not limited to, Section XXI. (Covenants Not to Sue by Plaintiff).  Certification of Completion of the Remedial Action shall not affect Settling Defendants' obligations under this Consent Decree.

51.     <u>Completion of the Work</u>.

> a.     Within 90 days after Settling Defendants conclude that all phases of the Work (including O & M), have been fully performed, Settling Defendants shall schedule and conduct a pre-certification inspection to be attended by Settling Defendants, EPA, and the State. If, after the pre-certification inspection, the Settling Defendants still believe that the Work has

*RD/RA Consent Decree*          *U.S. v. City of Hastings, Dravo Corporation, and Dutton-Lainson Company*

been fully performed, Settling Defendants shall submit a written report by a registered professional engineer stating that the Work has been completed in full satisfaction of the requirements of this Consent Decree. The report shall contain the following statement, signed by a responsible corporate official of a Settling Defendant or the Settling Defendants' Project Coordinator:

> To the best of my knowledge, after thorough investigation, I certify that the information contained in or accompanying this submission is true, accurate and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

If, after review of the written report, EPA, after reasonable opportunity to review and comment by the State, determines that any portion of the Work has not been completed in accordance with this Consent Decree, EPA will notify Settling Defendants in writing of the activities that must be undertaken by Settling Defendants pursuant to this Consent Decree to complete the Work, provided, however, that EPA may only require Settling Defendants to perform such activities pursuant to this Paragraph to the extent that such activities are consistent with the "scope of the remedy selected in the ROD," as that term is defined in Paragraph 14.b. EPA will set forth in the notice a schedule for performance of such activities consistent with the Consent Decree and the SOW or require the Settling Defendants to submit a schedule to EPA for approval pursuant to Section XI. (EPA Approval of Plans and Other Submissions). Settling Defendants shall perform all activities described in the notice in accordance with the specifications and schedules established therein, subject to their right to invoke the dispute resolution procedures set forth in Section XIX. (Dispute Resolution).

                                  b.        If EPA concludes, based on the initial or any subsequent request for Certification of Completion by Settling Defendants and after a reasonable opportunity for review and comment by the State, that the Work has been performed in accordance with this Consent Decree, EPA will so notify the Settling Defendants in writing.

**XV.  EMERGENCY RESPONSE**

        52.      In the event of any action or occurrence during the performance of the Work which causes or threatens a release of Waste Material from the Subsite that constitutes an emergency situation or may present an immediate threat to public health or welfare or the environment, Settling Defendants shall, subject to Paragraph 53., immediately take all appropriate action to prevent, abate, or minimize such release or threat of release, and shall immediately notify the EPA's Project Coordinator, or, if the Project Coordinator is unavailable, EPA's Alternate Project Coordinator. Settling Defendants shall take such actions in consultation with EPA's Project Coordinator or other available authorized EPA officer and in accordance with all applicable provisions of the Health and Safety Plans, the Contingency Plans, and any other applicable plans or documents developed pursuant to the SOW. In the event that Settling Defendants fail to take appropriate response action as required by this Section, and EPA takes such action instead, Settling Defendants shall reimburse EPA all costs of the response action not inconsistent with the NCP pursuant to Section XVI. (Payments for Response Costs).

*RD/RA Consent Decree*     *U.S. v. City of Hastings, Dravo Corporation, and Dutton-Lainson Company*

53.     Nothing in the preceding Paragraph or in this Consent Decree shall be deemed to limit any authority of the United States a) to take all appropriate action to protect human health and the environment or to prevent, abate, respond to, or minimize an actual or threatened release of Waste Material on, at, or from the Subsite, or b) to direct or order such action, or seek an order from the Court, to protect human health and the environment or to prevent, abate, respond to, or minimize an actual or threatened release of Waste Material on, at, or from the Subsite, subject to Section XXI. (Covenants Not to Sue by Plaintiff).

**XVI.  PAYMENTS FOR RESPONSE COSTS**

54.  Payments By Settling Defendants for Past Response Costs.

a.     Within 30 days of the Effective Date, Settling Defendants shall pay to EPA $54,490 in payment for Past Response Costs related to the development of the final remedial action for OU 2.  Payment shall be made by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice account in accordance with current EFT procedures, referencing, EPA Site/Spill ID Number 07S2, OU 2, and DOJ Case Number 90-11-2-1260/7. Payment shall be made in accordance with instructions provided to the Settling Defendants by the Financial Litigation Unit of the United States Attorney's Office for the District of Nebraska following lodging of the Consent Decree.  Any payments received by the Department of Justice after 4:00 p.m. (Eastern Time) will be credited on the next business day.

b.     At the time of payment, Settling Defendants shall send notice that payment has been made to the United States and to EPA, in accordance with Section XXVI. (Notices and Submissions).

c.     The total amount to be paid by Setting Defendants pursuant to Subparagraph 54.a. shall be deposited in the Hastings Ground Water Contamination Special Account within the EPA Hazardous Substance Superfund to be retained and used to conduct or finance response actions at or in connection with the Site, or to be transferred by EPA to the EPA Hazardous Substance Superfund.

55.  Payments by Settling Defendants for Future Response Costs.

a.     Settling Defendants shall pay to EPA 75% of all Interim Response Costs and 75% of all other Future Response Costs not inconsistent with the National Contingency Plan.  On a periodic basis the United States will send Settling Defendants a bill requiring payment that includes a cost summary, which includes direct and indirect costs incurred by EPA and its contractors, and the DOJ-prepared cost summary which reflects costs incurred by DOJ and its contractors, if any.  Settling Defendants shall make all payments within 45 days of Settling Defendants' receipt of each bill requiring payment, except as otherwise provided in Paragraph 56.a.  Settling Defendants shall make all payments required by this Paragraph by a certified or cashier's check or checks made payable to "EPA Hazardous Substance Superfund," referencing the name and address of the party making the payment, EPA Site/Spill ID Number 07S2, OU 2 and DOJ Case Number 90-11-2-1260/7.  Settling Defendants shall send the checks to:

EPA Hazardous Substance Superfund
EPA Region VII
P.O. Box 371099M
Pittsburgh, PA 15251.

At the time of payment, Settling Defendants shall send notice that payment has been made to the United States, the EPA Project Coordinator, and the EPA Financial Management Officer, in accordance with Section XXVI. (Notices and Submissions).

b.        Settling Defendants shall transmit payments exceeding $25,000 by wire transfer, with a copy of the transaction to the EPA Project Coordinator and the EPA Financial Management Officer as provided in Section XXVI. (Notices and Submissions).  Wire transfer shall be sent to:

MELLON BANK
ABA 043000261
Account 9109125
EPA Region 7

c.        Future Response Costs will be deposited in the Hastings Ground Water Contamination Site Special Account within the EPA Hazardous Substance Superfund.

56.        Procedure for Settling Defendants if Contesting Payment.  Settling Defendants may contest payment of any Future Response Costs under Paragraph 55. if they determine that the United States has made an accounting error or if they allege that a cost item that is included represents costs that are inconsistent with the NCP.  Such objection shall be made in writing within 45 days of receipt of the bill and list of EPA contract costs, employee charges and travel charges and must be sent to the United States (if the United States' accounting is being disputed pursuant to Section XXVI. (Notices and Submissions).  Any such objection shall specifically identify the contested Future Response Costs and the basis for objection.  In the event of an objection, within the 45 day period, the Settling Defendants shall pay all uncontested Future Response Costs to the United States in the manner described in Paragraph 55.a.  Simultaneously, the Settling Defendants shall establish an interest-bearing escrow account in a Federally-insured bank duly chartered in the State of Nebraska and remit to that escrow account funds equivalent to the amount of the contested Future Response Costs.  The Settling Defendants shall send to the United States, as provided in Section XXVI. (Notices and Submissions), a copy of the transmittal letter and check paying the uncontested Future Response Costs, and a copy of the correspondence that establishes and funds the escrow account, including, but not limited to, information containing the identity of the bank and bank account under which the escrow account is established as well as a bank statement showing the initial balance of the escrow account.  Simultaneously with establishment of the escrow account, the Settling Defendants shall initiate the Dispute Resolution procedures in Section XIX. (Dispute Resolution).  If the United States prevails in the dispute, within five (5) days of the resolution of the dispute, the Settling Defendants shall pay the sums due (with accrued interest) to the United States in the manner described in Paragraph 55.a.  If the Settling Defendants prevail concerning any aspect of the contested costs, the Settling Defendants shall pay that portion of the costs (plus associated

accrued interest) for which they did not prevail to the United States in the manner described in Paragraph 55.a. Settling Defendants shall be disbursed any balance of the escrow account. The dispute resolution procedures set forth in this Paragraph in conjunction with the procedures set forth in Section XIX. (Dispute Resolution) shall be the exclusive mechanisms for resolving disputes regarding the Settling Defendants' obligation to reimburse the United States for its Future Response Costs.

57.    <u>Interest Owed by Settling Defendants.</u>  In the event that the payments required by Paragraph 54.a. are not made within 30 days of the Effective Date or the payments required by Paragraph 55.a. are not made within 45 days of the Settling Defendants' receipt of the bill, Settling Defendants shall pay Interest on the unpaid balance. The Interest to be paid on Past Response Costs under this Paragraph shall begin to accrue on the Effective Date. The Interest on Future Response Costs shall begin to accrue on the date of the bill. The Interest shall accrue through the date of the Settling Defendants' payment. Payments of Interest made under this Paragraph shall be in addition to such other remedies or sanctions available to Plaintiff by virtue of Settling Defendants' failure to make timely payments under this Section including, but not limited to, payment of stipulated penalties pursuant to Section XX. The Settling Defendants shall make all payments required by this Paragraph in the manner described in Paragraph 55.a.

58.    <u>Payments by the Settling Federal Agency to EPA Hazardous Substance Superfund for Response Costs</u>.

a.

(1)    As soon as reasonably practicable after the Effective Date, the United States, on behalf of the Settling Federal Agency, shall pay to the EPA Hazardous Substance Superfund $18,163.33, in reimbursement of Past Response Costs.

(2)    As soon as reasonably practicable after the receipt by the Settling Federal Agency of a bill requiring payment of Interim Response Costs that includes a Cost Summary/SCORPIOS Report, Settling Federal Agency shall pay 25% of the Interim Response Costs to the EPA Hazardous Substance Superfund.

(3)    As soon as reasonably practicable after the receipt by the Settling Federal Agency of a bill requiring payment of Future Oversight Costs or Future Response Costs that includes a Cost Summary/SCORPIOS Report, Settling Federal Agency shall pay 25% of the Future Oversight Costs or Future Response Costs to the EPA Hazardous Substance Superfund.

b.    If the Past Response Cost payment required by Paragraph 58.a.(1) is not made as soon as reasonably practicable after the Effective Date, or the Oversight Cost or Future Response payments required by Paragraph 58.a.(2)-(3) are not made as soon as reasonably practicable after receipt of a bill, the appropriate EPA Regional Branch Chief may raise any issues relating to payment to the appropriate DOJ Assistant Section Chief for the Environmental Defense Section. In any event, if payment of Past Response Costs is not made within 120 days after the Effective Date of this Consent Decree or payment of Future Response Costs is not made within 120 days after receipt of a bill, EPA and DOJ have agreed to resolve the issue within 30 days in accordance with a letter agreement.

      c.    Payments by the Settling Federal Agency shall be deposited in the Hastings Ground Water Contamination Special Account within the EPA Hazardous Substance Superfund and used to conduct or finance response actions at or in connection with the Site, or to be transferred by EPA to the EPA Hazardous Substance Superfund.

      d.    In the event that the Past Response Cost payment required by this Paragraph 58. is not made within 121 days of the Effective Date of this Consent Decree, Interest on the amount due shall be paid at the rate established pursuant to section 107(a) of CERCLA, 42 U.S.C § 9607(a), commencing on the 121st day after the Effective Date and accruing through the date of the payment.  In the event that the Interim Response Cost payment required by Paragraph 57. is not made within 45 days of receipt of a bill as described in this Paragraph 58., Interest on the amount due shall be paid at the rate established pursuant to section 107(a) of CERCLA, 42 U.S.C. § 9607(a), commencing on the 45th day after the date of receipt of bill and accruing through the date of the payment.

      e.    At the time of each payment, the Settling Federal Agency shall send notice in accordance with Section XXVI (Notices and Submissions) that payment has been made to the United States, the EPA Project Coordinator, and the EPA Financial Management Officer, the Settling Defendants' Project Coordinator in accordance with Section XXVI (Notices and Submissions).

      59.    <u>Payments by Settling Federal Agency to Settling Defendants</u>

      a.    The United States, on behalf of the Settling Federal Agency, shall pay 25% of the Settling Defendants' Response Costs as follows:

      (1)    As soon as reasonably practicable after the Effective Date, the United States, on behalf of the Settling Federal Agency, shall pay to the Settling Defendants $250,000.

      (2)    After EPA issues the Certificate of Completion pursuant to Paragraph 51, the United States, on behalf of the Settling Federal Agency, shall pay to the Settling Defendants 25% of Settling Defendants' Response Costs in excess of $1,000,000 in accord with the following procedure:

      (a)  No later than 90 days after EPA issues the Certificate of Completion, Settling Defendants will send the United States a statement that includes an accounting of Settling Defendants' Response Costs.  Included with the statement shall be copies of invoices and other documents sufficient to support the claimed Response Costs.  The statement shall also contain a narrative description of the consideration received and a certification by Settling Defendants under penalty of perjury that each claimed item qualifies as a Response Cost and was incurred and paid by Settling Defendants.  The United States will make the required payment within 120 days of receiving the statement except as provided below.

      (b)  If Settling Defendants fail to support a Response Cost with the necessary documentation, or otherwise fail to demonstrate that a cost is properly reimbursable under this Agreement, the United States may object, in writing, within sixty (60) days of receipt of the statement, and said objection shall be sent to Settling Defendants in

accordance with Section XXVI (Notices and Submissions) as described in Paragraph 110 of this Consent Decree. Any such objection shall identify the contested Response Cost and the basis for objection. In the event of an objection, the United States shall, within the 120 day period, reimburse its share of any uncontested Response Costs to Settling Defendants by electronic transfer, consistent with Paragraph 59(c). After the transmission of any objection, the United States shall initiate the dispute resolution procedures provided in Paragraph 69.b. of this Consent Decree.

        b.     Interest on the amount due under Paragraph 59(a)(2)(a) above shall be paid commencing on the 121st day after receipt of the submission by the United States and accruing through the date of the payment. Interest shall be payable at the rate established pursuant to section 107(a) of CERCLA, 42 U.S.C § 9607(a).

        c.     Payments under this Paragraph will be made by electronic transfer pursuant to instructions to be provided by the Settling Defendants

        60.     The Parties to the Consent Decree recognize and acknowledge that the payment obligations of the Settling Federal Agency can only be paid from appropriated funds legally available for such purpose. Nothing in this Consent Decree shall be interpreted or construed as a commitment or requirement that the United States or the Settling Federal Agency shall obligate or pay funds in contravention of the Anti-Deficiency Act, 31 U.S.C. § 1341, or any other applicable provision of law.

### XVII. <u>INDEMNIFICATION AND INSURANCE</u>

        61.     <u>Settling Defendants' Indemnification of the United States</u>.

        a.     The United States does not assume any liability by entering into this agreement or by virtue of any designation of Settling Defendants as EPA's authorized representatives under Section 104(e) of CERCLA. Settling Defendants shall indemnify, save and hold harmless the United States and its officials, agents, employees, contractors, subcontractors, or representatives for or from any and all claims or causes of action arising from, or on account of, negligent or other wrongful acts or omissions of Settling Defendants, their officers, directors, employees, agents, contractors, subcontractors, and any persons acting on their behalf or under their control, in carrying out activities pursuant to this Consent Decree, including, but not limited to, any claims arising from any designation of Settling Defendants as EPA's authorized representatives under Section 104(e) of CERCLA. Further, the Settling Defendants agree to pay the United States (with the exception of the Settling Federal Agency) all costs it incurs including, but not limited to, attorneys fees and other expenses of litigation and settlement arising from, or on account of, claims made against the United States based on negligent or other wrongful acts or omissions of Settling Defendants, their officers, directors, employees, agents, contractors, subcontractors, and any persons acting on their behalf or under their control, in carrying out activities pursuant to this Consent Decree. The United States shall not be held out as a party to any contract entered into by or on behalf of Settling Defendants in carrying out activities pursuant to this Consent Decree. Neither the Settling Defendants nor any such contractor shall be considered an agent of the United States.

     b.    The United States shall give Settling Defendants notice of any claim for which the United States plans to seek indemnification pursuant to this Paragraph 61., and shall consult with Settling Defendants prior to settling such claim.

     62.    Settling Defendants waive all claims against the United States, with the exception of the Settling Federal Agency if the Settling Federal Agency does not make the payment required under Paragraphs 58. and 59. herein, for damages or reimbursement or for set-off of any payments made or to be made to the United States, arising from or on account of any contract, agreement, or arrangement between any one or more of Settling Defendants and any person for performance of Work on or relating to the Subsite, including, but not limited to, claims on account of construction delays. In addition, Settling Defendants shall indemnify and hold harmless the United States with the exception of the Settling Federal Agency, if the Settling Federal Agency does not make the payment required under Paragraphs 58. and 59. herein, with respect to any and all claims for damages or reimbursement arising from or on account of any contract, agreement, or arrangement between any one or more of Settling Defendants and any person for performance of Work on or relating to the Subsite, including, but not limited to, claims on account of construction delays.

     63.    No later than 15 days before commencing any on-site Work, Settling Defendants shall secure, and shall maintain until the first anniversary of EPA's Certification of Completion of the Remedial Action pursuant to Subparagraph 50.b. of Section XIV. (Certification of Completion), comprehensive general liability insurance with limits of $5,000,000 dollars, combined single limit, and automobile liability insurance with limits of $2,500,000 dollars, combined single limit, naming the United States as an additional insureds. In addition, for the duration of this Consent Decree, Settling Defendants shall satisfy, or shall ensure that their contractors or subcontractors satisfy, all applicable laws and regulations regarding the provision of worker's compensation insurance for all persons performing the Work on behalf of Settling Defendants in furtherance of this Consent Decree. Prior to commencement of the Work under this Consent Decree, Settling Defendants shall provide to EPA certificates of such insurance and a copy of each insurance policy. Settling Defendants shall resubmit such certificates and copies of policies each year on the anniversary of the Effective Date. If Settling Defendants demonstrate by evidence satisfactory to EPA that any contractor or subcontractor maintains insurance equivalent to that described above, or insurance covering the same risks but in a lesser amount, then, with respect to that contractor or subcontractor, Settling Defendants need provide only that portion of the insurance described above which is not maintained by the contractor or subcontractor.

## XVIII. FORCE MAJEURE

     64.    "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of the Settling Defendants, of any entity controlled by Settling Defendants, or of Settling Defendants' contractors, that delays or prevents the performance of any obligation under this Consent Decree despite Settling Defendants' best efforts to fulfill the obligation. The requirement that the Settling Defendants exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure and best efforts to address the effects of any potential force majeure (a) as it is occurring and (b) following the potential force majeure, such that the delay is minimized to the greatest

extent possible. "Force Majeure" does not include financial inability to complete the Work or a failure to attain the Performance Standards.

65.     If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure, the Settling Defendants shall notify orally EPA's Project Coordinator or, in his or her absence, EPA's Alternate Project Coordinator or, in the event both of EPA's designated representatives are unavailable, the Director of the Superfund Division, EPA Region VII, within 48 hours of when Settling Defendants first knew that the event might cause a delay.  Within seven days thereafter, Settling Defendants shall provide in writing to EPA an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; the Settling Defendants' rationale for attributing such delay to a force majeure if they intend to assert such a claim; and a statement as to whether, in the opinion of the Settling Defendants, such event may cause or contribute to an endangerment to public health, welfare or the environment.  The Settling Defendants shall include with any notice all available documentation supporting their claim that the delay was attributable to a force majeure.  Failure to comply with the above requirements shall preclude Settling Defendants from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure.  Settling Defendants shall be deemed to know of any circumstance of which Settling Defendants, any entity controlled by Settling Defendants, or Settling Defendants' contractors knew or should have known.

66.     If EPA agrees that the delay or anticipated delay is attributable to a force majeure, the time for performance of the obligations under this Consent Decree that are affected by the force majeure will be extended by EPA for such time as is necessary to complete those obligations.  An extension of the time for performance of the obligations affected by the force majeure shall not, of itself, extend the time for performance of any other obligation.  If EPA does not agree that the delay or anticipated delay has been or will be caused by a force majeure, EPA will notify the Settling Defendants in writing of its decision.  If EPA agrees that the delay is attributable to a force majeure, EPA will notify the Settling Defendants in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure.

67.     If the Settling Defendants elect to invoke the dispute resolution procedures set forth in Section XIX. (Dispute Resolution), they shall do so no later than 15 days after receipt of EPA's notice.  In any such proceeding, Settling Defendants shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Settling Defendants complied with the requirements of Paragraphs 64. and 65. above.  If Settling Defendants carry this burden, the delay at issue shall be deemed not to be a violation by Settling Defendants of the affected obligation of this Consent Decree identified to EPA and the Court.

### XIX.  DISPUTE RESOLUTION

68.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree.  However, the procedures set forth in this Section shall not apply to actions by the United States to enforce obligations of the Settling Defendants that have not been disputed in accordance with this Section.

69.     Informal Negotiations

a.     Any dispute which arises under or with respect to this Consent Decree, excluding that in Paragraph 69.b. below, shall in the first instance be the subject of informal negotiations between the parties to the dispute.  The period for informal negotiations shall not exceed 20 days from the time the dispute arises, unless it is modified by written agreement of the parties to the dispute.  The dispute shall be considered to have arisen when one party sends the other parties a written Notice of Dispute.

b.     Dispute regarding United States' obligation to reimburse Response Costs:

(1).     Any dispute with respect to the United States' obligation to reimburse Response Costs under Paragraph 59.a.(2) of this Consent Decree shall in the first instance be the subject of informal negotiations between the Parties.  The period for informal negotiations shall last sixty (60) days from the date the United States transmits its objection pursuant to Paragraph 59.a.ii.(b), unless this period is extended by written agreement of the Parties.  If informal negotiations are unsuccessful, the Parties shall notify the Court of the dispute and the need for a resolution, either by the Court or through the use of Court-annexed alternative dispute resolution procedures, unless the Parties agree in writing on an alternative method of dispute resolution.

(2)     If a reimbursement is determined to be due pursuant to Paragraph 59.a.(2), the United States shall pay the sum determined to be due within 120 days of the resolution of the dispute.  Interest on the amount due shall be paid at the rate established pursuant to section 107(a) of CERCLA, 42 U.S.C § 9607(a), on the amount due commencing on the 121st day after receipt of the submission by Settling Defendants and accruing through the date of the payment.

70.     Statements of Position.

a.     In the event that the parties cannot resolve a dispute by informal negotiations under the preceding Paragraph, then the position advanced by EPA shall be considered binding unless, within 15 days after the conclusion of the informal negotiation period, Settling Defendants invoke the formal dispute resolution procedures of this Section by serving on the United States a written Statement of Position on the matter in dispute, including, but not limited to, any factual data, analysis or opinion supporting that position and any supporting documentation relied upon by the Settling Defendants.  The Statement of Position shall specify the Settling Defendants' position as to whether formal dispute resolution should proceed under Paragraph 71. or Paragraph 72.

b.       Within 21 days after receipt of Settling Defendants' Statement of Position, EPA will serve on Settling Defendants its Statement of Position, including, but not limited to, any factual data, analysis, or opinion supporting that position and all supporting documentation relied upon by EPA.  EPA's Statement of Position shall include a statement as to whether formal dispute resolution should proceed under Paragraph 71. or 72.  Within seven days after receipt of EPA's Statement of Position, Settling Defendants may submit a Reply.

c.       If there is disagreement between EPA and the Settling Defendants as to whether dispute resolution should proceed under Paragraph 71. or 72., the parties to the dispute shall follow the procedures set forth in the paragraph determined by EPA to be applicable.  However, if the Settling Defendants ultimately appeal to the Court to resolve the dispute, the Court shall determine which paragraph is applicable in accordance with the standards of applicability set forth in Paragraphs 71. and 72.

71.    Disputes That Pertain to Selection of Adequacy of Response Action.
Formal dispute resolution for disputes pertaining to the selection or adequacy of any response action and all other disputes that are accorded review on the administrative record under applicable principles of administrative law shall be conducted pursuant to the procedures set forth in this Paragraph.  For purposes of this Paragraph, the adequacy of any response action includes, without limitation: (1) the adequacy or appropriateness of plans, procedures to implement plans, or any other items requiring approval by EPA under this Consent Decree; and (2) the adequacy of the performance of response actions taken pursuant to this Consent Decree. Nothing in this Consent Decree shall be construed to allow any dispute by Settling Defendants regarding the validity of the ROD's provisions.  This provision shall not preclude Settling Defendants from recommending to EPA an amendment to the ROD.

a.       An administrative record of the dispute shall be maintained by EPA and shall contain all statements of position, including supporting documentation, submitted pursuant to this Section.  Where appropriate, EPA may allow submission of supplemental statements of position by the parties to the dispute.

b.       The Director of the Superfund Division, EPA Region VII, will issue a final administrative decision resolving the dispute based on the administrative record described in Paragraph 71.a.  This decision shall be binding upon the Settling Defendants, subject only to the right to seek judicial review pursuant to Paragraph 71. c. and d.

c.       Any administrative decision made by EPA pursuant to Paragraph 71.b. shall be reviewable by this Court, provided that a motion for judicial review of the decision is filed by the Settling Defendants with the Court and served on all Parties within 10 days of receipt of EPA's decision.  The motion shall include a description of the matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of this Consent Decree.  The United States may file a response to Settling Defendants' motion.

d.       In proceedings on any dispute governed by this Paragraph, Settling Defendants shall have the burden of demonstrating that the decision of the Director of the Superfund Division, EPA Region VII, is arbitrary and capricious or otherwise not in accordance with law.  Judicial review of EPA's decision shall be on the administrative record compiled

*RD/RA Consent Decree*  *U.S. v. City of Hastings, Dravo Corporation, and Dutton-Lainson Company*

pursuant to Paragraph 71.a.

72.     <u>Disputes That Do Not Pertain to Selection of Adequacy of Response Action.</u>  Formal dispute resolution for disputes that neither pertain to the selection or adequacy of any response action nor are otherwise accorded review on the administrative record under applicable principles of administrative law, shall be governed by this Paragraph.

a.     Following receipt of Settling Defendants' Statement of Position submitted pursuant to Paragraph 70., the Director of the Superfund Division, EPA Region VII, will issue a final decision resolving the dispute.  The Division Director's decision shall be binding on the Settling Defendants unless, within 10 days of receipt of the decision, the Settling Defendants file with the Court and serve on the parties a motion for judicial review of the decision setting forth the matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of the Consent Decree.  The United States may file a response to Settling Defendants' motion.

b.     Notwithstanding Paragraph M of Section I (Background) of this Consent Decree, judicial review of any dispute governed by this Paragraph shall be governed by applicable principles of law.

73.     The invocation of formal dispute resolution procedures under this Section shall not extend, postpone or affect in any way any obligation of the Settling Defendants under this Consent Decree, not directly in dispute, unless the EPA Region VII Director of the Superfund Division or the Court agrees otherwise.  Stipulated penalties with respect to the disputed matter shall continue to accrue but payment shall be stayed pending resolution of the dispute as provided in Paragraph 82.  Notwithstanding the stay of payment, stipulated penalties shall accrue from the first day of noncompliance with any applicable provision of this Consent Decree.  In the event that the Settling Defendants do not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section XX. (Stipulated Penalties).

## XX.  STIPULATED PENALTIES

74.     Settling Defendants shall be liable for stipulated penalties in the amounts set forth in Paragraphs 75. and 76. to the United States for failure to comply with the requirements of this Consent Decree specified below, unless excused under Section XVIII. (Force Majeure). "Compliance" by Settling Defendants shall include completion of the activities under this Consent Decree or any Work Plan or other plan approved under this Consent Decree identified below in accordance with all applicable requirements of law, this Consent Decree, the SOW, and any plans or other documents approved by EPA pursuant to this Consent Decree and within the specified time schedules established by and approved under this Consent Decree.

75.     <u>Stipulated Penalty Amounts - Work</u>.

a.     The following stipulated penalties shall accrue per violation per day for any noncompliance identified in Subparagraph 75.b:

Penalty Per Violation Per Day

Period of Noncompliance

| | |
|---|---|
| $3,000 | 1st through 14th day |
| $6,000 | 15th through 30th day |
| $15,000 | 31st day and beyond |

       b.      Compliance Milestones.

Requirements set forth in Paragraphs 11. (Remedial Design), 12 .(Remedial Action), 14. (Modification of SOW), and 18. (Further Response Actions and Sections IX. (Access), XIII. (Assurance of Ability to Complete Work), XV. (Emergency Response), and XVI. (Payments for Response Costs).

76.      Stipulated Penalty Amounts - Reports.

The following stipulated penalties shall accrue per violation per day for failure to submit timely or adequate reports or other written documents pursuant to Paragraphs 11. (RD/RA Work Plan)16. (Off-Site Shipment Notification), 63. (Certificates of Insurance), Section X. (Reporting Requirements), and XIV. (Certification of Completion):

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $750 | 1st through 14th day |
| $2,000 | 15th through 30th day |
| $6,000 | 31st day and beyond |

77.      In the event that EPA assumes performance of a portion or all of the Work pursuant to Paragraph 91. of Section XXI. (Covenants Not to Sue by Plaintiff), Settling Defendants shall be liable for a stipulated penalty in the amount of $1,120,000.

78.      All penalties shall begin to accrue on the day after the complete performance is due or the day a violation occurs, and shall continue to accrue through the final day of the correction of the noncompliance or completion of the activity.  However, stipulated penalties shall not accrue:  (1) with respect to a deficient submission under Section XI. (EPA Approval of Plans and Other Submissions), during the period, if any, beginning on the 31st day after EPA's receipt of such submission until the date that EPA notifies Settling Defendants of any deficiency; (2) with respect to a decision by the Director of the Superfund Division, EPA Region VII, under Paragraph 71. or 72. of Section XIX. (Dispute Resolution), during the period, if any, beginning on the 21st day after the date that Settling Defendants' reply to EPA's Statement of Position is received until the date that the Director issues a final decision regarding such dispute; or (3) with respect to judicial review by this Court of any dispute under Section XIX. (Dispute Resolution), during the period, if any, beginning on the 31st day after the Court's receipt of the final submission regarding the dispute until the date that the Court issues a final decision regarding such dispute.  Nothing herein shall prevent the simultaneous accrual of separate penalties for separate violations of this Consent Decree.

79.      Following EPA's determination that Settling Defendants have failed to comply with a requirement of this Consent Decree,  EPA may give Settling Defendants written notification of the same and describe the noncompliance.  EPA may send the Settling Defendants a written demand for the payment of the penalties.  However, penalties shall accrue as provided in the preceding Paragraph regardless of whether EPA has notified the Settling Defendants of a violation.

80.      All penalties accruing under this Section shall be due and payable to the United States within 30 days of the Settling Defendants' receipt from EPA of a demand for payment of the penalties, unless Settling Defendants invoke the Dispute Resolution procedures under Section XIX. (Dispute Resolution).  All payments to the United States under this Section shall be paid by certified or cashier's check(s) made payable to "EPA Hazardous Substances Superfund," and shall be mailed to:

EPA Hazardous Substances Superfund
EPA Region VII
P.O. Box 371099M
Pittsburgh, PA 15251

The check (s) shall indicate that the payment is for stipulated penalties, and shall reference the EPA Region and Site/Spill ID #07S2, OU 2, the DOJ Case Number 90-11-2-1260/7, and the name and address of the party making payment.  Copies of check(s) paid pursuant to this Section, and any accompanying transmittal letter(s), shall be sent to the United States, the EPA Project Coordinator, and the EPA Financial Management Officer, as provided in Section XXVI. (Notices and Submissions).  Payments exceeding $25,000 shall be by wire transfer as set forth in Paragraph 55.b. herein.

81.      The payment of penalties shall not alter in any way Settling Defendants' obligation to complete the performance of the Work required under this Consent Decree.

82.      Penalties shall continue to accrue as provided in Paragraph 78. during any dispute resolution period, but need not be paid until the following:

a.      If the dispute is resolved by agreement or by a decision of EPA that is not appealed to this Court, accrued penalties determined to be owing shall be paid to EPA within 15 days of the agreement or the receipt of EPA's decision or order;

b.      If the dispute is appealed to this Court and the United States prevails in whole or in part, Settling Defendants shall pay all accrued penalties determined by the Court to be owed to EPA within 60 days of receipt of the Court's decision or order, except as provided in Subparagraph c. below;

c.      If the District Court's decision is appealed by any Party, Settling Defendants shall pay all accrued penalties determined by the District Court to be owing to the United States into an interest-bearing escrow account within 60 days of receipt of the Court's decision or order.  Penalties shall be paid into this account as they continue to accrue, at least every 60 days.  Within 15 days of receipt of the final appellate court decision, the escrow agent

shall pay the balance of the account to EPA or to Settling Defendants to the extent that they prevail.

83.     If Settling Defendants fail to pay stipulated penalties when due, the United States may institute proceedings to collect the penalties, as well as interest.  Settling Defendants shall pay Interest on the unpaid balance, which shall begin to accrue on the date of demand made pursuant to Paragraph 80.

84.     Nothing in this Consent Decree shall be construed as prohibiting, altering, or in any way limiting the ability of the United States to seek any other remedies or sanctions available by virtue of Settling Defendants' violation of this Decree or of the statutes and regulations upon which it is based, including, but not limited to, penalties pursuant to Section 122(*l*) of CERCLA, provided, however, that the United States shall not seek civil penalties pursuant to Section 122(*l*) of CERCLA for any violation for which a stipulated penalty is provided herein, except in the case of a willful violation of the Consent Decree.

85.     Notwithstanding any other provision of this Section, the United States may, in its unreviewable discretion, waive any portion of stipulated penalties that have accrued pursuant to this Consent Decree.

## XXI.  COVENANTS BY PLAINTIFF

86.     The following covenants extend only to the Settling Defendants and the Settling Federal Agency and do not extend to any other person.

    a.     <u>As to Settling Defendants</u>.  In consideration of the actions that will be performed and the payments that will be made by the Settling Defendants under the terms of the Consent Decree, and except as specifically provided in Paragraphs 87., 88., and 90. of this Section, the United States covenants not to sue or to take administrative action against Settling Defendants pursuant to Sections 106 and 107(a) of CERCLA relating to the Subsite.  Except with respect to future liability, these covenants not to sue shall take effect upon the receipt by EPA of the payments required by Paragraph 54.a. of Section XVI. (Payments for Response Costs).  With respect to future liability, these covenants not to sue shall take effect upon Certification of Completion of Remedial Action by EPA pursuant to Paragraph 50.b. of Section XIV. (Certification of Completion).  These covenants not to sue are conditioned upon the satisfactory performance by Settling Defendants of their obligations under this Consent Decree.  These covenants not to sue extend only to the Settling Defendants and do not extend to any other person.

    b.     <u>As to Settling Federal Agency</u>.  In consideration of the payments that will be made by the Settling Federal Agency under the terms of this Consent Decree, and except as specifically provided for in Paragraphs 87., 88., and 90., EPA covenants not to take administrative action against the Settling Federal Agency pursuant to Sections 106 and 107(a) of CERCLA for performance of the Work and for recovery of Past Response Cost and Future Response Costs.  Except with respect to future liability, EPA's covenants shall take effect upon the receipt by EPA of the payments required by Paragraph 58.a. of Section XVI. (Payments for Response Costs).  With respect to future liability, EPA's covenant shall take effect upon Certification of Completion of Remedial Action by EPA pursuant to Paragraph 50.b. of Section

XIV. (Certification of Completion). These covenants are conditioned upon the satisfactory performance by the Settling Federal Agency of its obligations under this Consent Decree. These covenants extend only to the Settling Federal Agency and do not extend to any other person.

87. <u>United States' Pre-certification Reservations</u>. Notwithstanding any other provision of this Consent Decree, the United States reserves, and this Consent Decree is without prejudice to, the right to institute proceedings in this action or in a new action, or to issue an administrative order seeking to compel Settling Defendants and EPA reserves the right to issue an administrative order seeking to compel the Settling Federal Agency:

        a.   to perform further response actions relating to the Subsite, or

        b.   to reimburse the United States for additional costs of response if, prior to Certification of Completion of the Remedial Action:

        (1) conditions at the Subsite, previously unknown to EPA, are discovered, or

        (2) information, previously unknown to EPA, is received, in whole or in part,

and EPA determines that these previously unknown conditions or information together with any other relevant information indicates that the Remedial Action is not protective of human health or the environment.

88. <u>United States' Post-certification Reservations</u>. Notwithstanding any other provision of this Consent Decree, the United States reserves, and this Consent Decree is without prejudice to, the right to institute proceedings in this action or in a new action, or to issue an administrative order seeking to compel Settling Defendants and EPA reserves the right to issue an administrative order to compel the Settling Federal Agency:

        a.   to perform further response actions relating to the Subsite, or

        b.   to reimburse the United States for additional costs of response if, subsequent to Certification of Completion of the Remedial Action:

        (1) conditions at the Subsite, previously unknown to EPA, are discovered, or

        (2) information, previously unknown to EPA, is received, in whole or in part,

and EPA determines that these previously unknown conditions or this information together with other relevant information indicate that the Remedial Action is not protective of human health or the environment.

89. For purposes of Paragraph 87., the information and the conditions known to EPA shall include only that information and those conditions known to EPA as of the date the

ROD was signed and set forth in the Record of Decision for the Subsite and the administrative record supporting the Record of Decision. For purposes of Paragraph 88., the information and the conditions known to EPA shall include only that information and those conditions known to EPA as of the date of Certification of Completion of the Remedial Action and set forth in the Record of Decision, the administrative record supporting the Record of Decision, the post-ROD administrative record, or in any information received by EPA pursuant to the requirements of this Consent Decree prior to Certification of Completion of the Remedial Action.

90. <u>General reservations of rights</u>. The United States reserves, and this Consent Decree is without prejudice to, all rights against Settling Defendants, and EPA and the federal natural resources trustees reserve, and this Consent Decree is without prejudice to, all rights against the Settling Federal Agency with respect to all matters, including but not limited to, the following:

a. claims based on a failure by Settling Defendants or Settling Federal Agency to meet a requirement of this Consent Decree;

b. liability arising from the past, present, or future disposal, release, or threat of release of Waste Material outside of the Subsite;

c. liability based upon the ownership or operation of the Subsite by Settling Defendants or Settling Federal Agency, or upon the transportation, treatment, storage, or disposal, or the arrangement for the transportation, treatment, storage, or disposal of Waste Material at or in connection with the Subsite by Settling Defendants or Settling Federal Agency, other than as provided in the ROD, the Work, or otherwise ordered by EPA, after signature of this Consent Decree by the Settling Defendants and Settling Federal Agency;

d. liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments;

e. criminal liability;

f. liability for violations of Federal or state law which occur during or after implementation of the Remedial Action; and

g. liability, prior to Certification of Completion of the Remedial Action, for additional response actions that EPA determines are necessary to achieve Performance Standards, but that cannot be required pursuant to Paragraph 14. (Modification of the SOW or Related Work Plans);

h. previously incurred costs of response above the amounts reimbursed pursuant to Paragraph 54.a. and 58.a;

i. liability for operable units at other subsites of the Site or the final response action for the Area-Wide Operable Unit OU 19;

j. liability for costs that the United States will incur related to the Subsite but are not within the definition of Future Response Costs;

k. liability for costs incurred or to be incurred by the Agency for Toxic Substances and Disease Registry related to the Subsite.

91.      <u>Work Takeover</u>

         a.      In the event EPA determines that Settling Defendants have (i) ceased implementation of any portion of the Work, or (ii) are seriously or repeatedly deficient or late in their performance of the Work, or (iii) are implementing the Work in a manner which may cause an endangerment to human health or the environment, EPA may issue a written notice ("Work Takeover Notice") to the Settling Defendants.  Any Work Takeover Notice issued by EPA will specify the grounds upon which such notice was issued and will provide Settling Defendants a period of 10 days within which to remedy the circumstances giving rise to EPA's issuance of such notice.

         b.      If, after expiration of the 10-day notice period specified in Paragraph 91.a., Settling Defendants have not remedied to EPA's satisfaction the circumstances giving rise to EPA's issuance of the relevant Work Takeover Notice, EPA may at any time thereafter assume the performance of all or any portions of the Work as EPA deems necessary ("Work Takeover").  EPA shall notify Settling Defendants in writing (which writing may be electronic) if EPA determines that implementation of a Work Takeover is warranted under this Paragraph 91.b.

         c.      Settling Defendants may invoke the procedures set forth in Section XIX. (Dispute Resolution), Paragraph 71., to dispute EPA's implementation of a Work Takeover under Paragraph 91.b.  However, notwithstanding Settling Defendants' invocation of such dispute resolution procedures, and during the pendency of any such dispute, EPA may in its sole discretion commence and continue a Work Takeover under Paragraph 91.b. until the earlier of (i) the date that Settling Defendants remedy, to EPA's satisfaction, the circumstances giving rise to EPA's issuance of the relevant Work Takeover Notice or (ii) the date that a final decision is rendered in accordance with Section XIX. (Dispute Resolution), Paragraph 71., requiring EPA to terminate such Work Takeover.

         d.      After commencement and for the duration of any Work Takeover, EPA shall have immediate access to and benefit of any performance guarantees provided pursuant to Section XIII. of this Consent Decree, in accordance with the provisions of Paragraph 48. of that Section.  If and to the extent that EPA is unable to secure the resources guaranteed under any such performance guarantees and the Settling Defendants fail to remit a cash amount up to but not exceeding the estimated cost of the remaining Work to be performed, all in accordance with the provisions of Paragraph 48., any unreimbursed costs incurred by EPA in performing Work under the Work Takeover shall be considered Future Response Costs that Settling Defendants shall pay pursuant to Section XVI. (Payment for Response Costs).

92.      Notwithstanding any other provision of this Consent Decree, the United States retains all authority and reserves all rights to take any and all response actions authorized by law.

<u>**XXII.  COVENANTS BY SETTLING DEFENDANTS AND SETTLING FEDERAL AGENCY**</u>

93.      <u>Covenant Not to Sue By Settling Defendants</u>.  Subject to the reservations in Paragraph 95., Settling Defendants hereby covenant not to sue and agree not to assert any claims or causes of action against the United States with respect to the Subsite or this Consent Decree,

including, but not limited to:

       a.    any direct or indirect claim for reimbursement from the Hazardous Substance Superfund (established pursuant to the Internal Revenue Code, 26 U.S.C. § 9507) through CERCLA Sections 106(b)(2), 107, 111, 112, 113 or any other provision of law;

       b.    any claims against the United States, including any department, agency or instrumentality of the United States under CERCLA Sections 107 or 113 related to the Subsite, or

       c.    any claims arising out of response actions at or in connection with the Site, including any claim under the United States Constitution, the Tucker Act, 28 U.S.C. § 1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, as amended, or at common law.

       Except as provided in Paragraph 97. (de micromis waiver) and Paragraph 102. (waiver of claim-splitting defenses), these covenants not to sue shall not apply in the event that the United States brings a cause of action or issues an order pursuant to the reservations set forth in Paragraphs 87., 88., and 90., but only to the extent that Settling Defendants' claims arise from the same response action, response costs, or damages that the United States is seeking pursuant to the applicable reservation.

       94.    <u>Covenant By Settling Federal Agency.</u>  The Settling Federal Agency hereby agrees not to assert any direct or indirect claim for reimbursement from the Hazardous Substance Superfund (established pursuant to the Internal Revenue Code, 26 U.S.C. § 9507) through CERCLA Sections 106(b)(2), 107, 111, 112, 113 or any other provision of law with respect to the Work, past response actions, and Past and Future Response Costs as defined in this Consent Decree.  This covenant does not preclude demand for reimbursement from the Superfund of costs incurred by a Settling Federal Agency in the performance of its duties (other than pursuant to this Consent Decree) as lead or support agency under the NCP.

       95.    The Settling Defendants reserve, and this Consent Decree is without prejudice to:

       a.    claims based on a failure by the United States, on behalf of the Settling Federal Agency, to meet a requirement of this Consent Decree;

       b.    claims against the United States, subject to the provisions of Chapter 171 of Title 28 of the United States Code, for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the United States while acting within the scope of his office or employment under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.  However, any such claim shall not include a claim for any damages caused, in whole or in part, by the act or omission of any person, including any contractor, who is not a Federal employee as that term is defined in 28 U.S.C. § 2671; nor shall any such claim include a claim based on EPA's selection of response actions, or the oversight or approval of the Settling Defendants' plans or activities.  The foregoing applies only to claims which are brought pursuant to any statute other than CERCLA and for which the waiver of sovereign immunity is found in a statute other than CERCLA.

96.      Nothing in this Consent Decree shall be deemed to constitute preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or 40 C.F.R. § 300.700(d).

97.      Settling Defendants agree not to assert any claims and to waive all claims or causes of action that they may have for all matters relating to the Subsite, including for contribution, against any person where the person's liability to Settling Defendants with respect to the Subsite is based solely on having arranged for disposal or treatment, or for transport for disposal or treatment, of hazardous substances at the Subsite, or having accepted for transport for disposal or treatment of hazardous substances at the Subsite, if:

      a.     The materials contributed by such person to the Subsite containing hazardous substances did not exceed the greater of (i) 0.002% of the total volume of waste at the Subsite, or (ii) 110 gallons of liquid materials or 200 pounds of solid materials.

      b.     This waiver shall not apply to any claim or cause of action against any person meeting the above criteria if EPA has determined that the materials contributed to the Subsite by such person contributed or could contribute significantly to the costs of response at the Subsite. This waiver also shall not apply with respect to any defense, claim, or cause of action that a Settling Defendant may have against any person if such person asserts a claim or cause of action relating to the Subsite against such Settling Defendant.

## XXIII.   EFFECT OF SETTLEMENT; CONTRIBUTION PROTECTION

98.      Nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Consent Decree. The preceding sentence shall not be construed to waive or nullify any rights that any person not a signatory to this decree may have under applicable law. Each of the Parties expressly reserves any and all rights (including, but not limited to, any right to contribution), defenses, claims, demands, and causes of action which each Party may have with respect to any matter, transaction, or occurrence relating in any way to the Subsite against any person not a Party hereto.

99.      The Parties agree, and by entering this Consent Decree this Court finds, that the Settling Defendants and the Settling Federal Agency are entitled, as of the Effective Date, to protection from contribution actions or claims as provided by CERCLA Section 113(f)(2), 42 U.S.C. § 9613(f)(2) for matters addressed in this Consent Decree. Matters addressed means the Work required by this Consent Decree and the Past and Future Response Costs, as defined herein.

100.     The Settling Defendants agree that with respect to any suit or claim for contribution brought by them for matters related to this Consent Decree they will notify the United States in writing no later than 60 days prior to the initiation of such suit or claim.

101.     The Settling Defendants also agree that with respect to any suit or claim for contribution brought against them for matters related to this Consent Decree, they will notify in writing the United States within 10 days of service of the complaint on them. In addition, Settling Defendants shall notify the United States within 10 days of service or receipt of any

Motion for Summary Judgment and within 10 days of receipt of any order from a court setting a case for trial.

102.     In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, recovery of response costs, or other appropriate relief relating to the Site, Settling Defendants shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case; provided, however, that nothing in this Paragraph affects the enforceability of the covenants not to sue set forth in Section XXI. (Covenants by Plaintiff).

**XXIV.  ACCESS TO INFORMATION**

103.     Settling Defendants shall provide to EPA, upon request, copies of all documents and information within their possession or control or that of their contractors or agents relating to activities at the Subsite or to the implementation of this Consent Decree, including, but not limited to, sampling, analysis, chain of custody records, manifests, trucking logs, receipts, reports, sample traffic routing, correspondence, or other documents or information related to the Work. Settling Defendants shall also make available to EPA, for purposes of investigation, information gathering, or testimony, their employees, agents, or representatives with knowledge of relevant facts concerning the performance of the Work.

104.     <u>Business Confidential and Privileged Documents</u>.

a.     Settling Defendants may assert business confidentiality claims covering part or all of the documents or information submitted to Plaintiff under this Consent Decree to the extent permitted by and in accordance with Section 104(e)(7) of CERCLA, 42 U.S.C. § 9604(e)(7), and 40 C.F.R. § 2.203(b). Documents or information determined to be confidential by EPA will be afforded the protection specified in 40 C.F.R. Part 2, Subpart B. If no claim of confidentiality accompanies documents or information when they are submitted to EPA, or if EPA has notified Settling Defendants that the documents or information are not confidential under the standards of Section 104(e)(7) of CERCLA or 40 C.F.R. Part 2, Subpart B, the public may be given access to such documents or information without further notice to Settling Defendants.

b.     The Settling Defendants may assert that certain documents, records and other information are privileged under the attorney-client privilege or any other privilege recognized by federal law. If the Settling Defendants assert such a privilege in lieu of providing documents, they shall provide the Plaintiff with the following: (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name and title of the author of the document, record, or information; (4) the name and title of each addressee and recipient; (5) a description of the contents of the document, record, or information: and (6) the privilege asserted by Settling Defendants. However, no documents, reports or other information created or generated pursuant to the requirements of the Consent Decree shall be withheld on the grounds that they are privileged.

105.    No claim of confidentiality shall be made with respect to any data, including, but not limited to, all sampling, analytical, monitoring, hydrogeologic, scientific, chemical, or engineering data, or any other documents or information evidencing conditions at or around the Site.

## XXV. **RETENTION OF RECORDS**

106.    Until 10 years after the Settling Defendants' receipt of EPA's notification pursuant to Paragraph 51.b. of Section XIV. (Certification of Completion of the Work), each Settling Defendant shall preserve and retain all non-identical copies of records and documents (including records or documents in electronic form) now in its possession or control or which come into its possession or control or that relate in any manner to its liability under CERCLA with respect to the Subsite, provided, however, that Settling Defendants who are potentially liable as owners or operators of the Subsite must retain, in addition, all documents and records that relate to the liability of any other person under CERCLA with respect to the Subsite. Each Settling Defendant must also retain, and instruct its contractors and agents to preserve, for the same period of time specified above all non-identical copies of the last draft or final version of any documents or records (including documents or records in electronic form) now in its possession or control or which come into its possession or control that relate in any manner to the performance of the Work, provided, however, that each Settling Defendant (and its contractors and agents) must retain, in addition, copies of all data generated during the performance of the Work and not contained in the aforementioned documents required to be retained. Each of the above record retention requirements shall apply regardless of any corporate retention policy to the contrary.

107.    At the conclusion of this document retention period, Settling Defendants shall notify the United States at least 90 days prior to the destruction of any such records or documents, and, upon request by the United States, Settling Defendants shall deliver any such records or documents to EPA. The Settling Defendants may assert that certain documents, records and other information are privileged under the attorney-client privilege or any other privilege recognized by federal law. If the Settling Defendants assert such a privilege, they shall provide the Plaintiff with the following: (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name and title of the author of the document, record, or information; (4) the name and title of each addressee and recipient; (5) a description of the subject of the document, record, or information; and (6) the privilege asserted by Settling Defendants. However, no documents, reports or other information created or generated pursuant to the requirements of the Consent Decree shall be withheld on the grounds that they are privileged.

108.    Each Settling Defendant hereby certifies individually that, to the best of its knowledge and belief, after thorough inquiry, it has not altered, mutilated, discarded, destroyed or otherwise disposed of any records, documents or other information (other than identical copies) relating to its potential liability regarding the Subsite since notification of potential liability by the United States or the State or the filing of suit against it regarding the Subsite and that it has fully complied with any and all EPA requests for information pursuant to Section 104(e) and 122(e) of CERCLA, 42 U.S.C. § 9604(e) and 9622(e), and Section 3007 of RCRA, 42 U.S.C. § 6927.

*RD/RA Consent Decree*        *U.S. v. City of Hastings, Dravo Corporation, and Dutton-Lainson Company*

109.     The United States acknowledges that the Settling Federal Agency (1) is subject of all applicable Federal record retention laws, regulations, and policies; and (2) has certified that it has fully complied with any and all EPA requests for information pursuant to Section 104(e) and 122(e) of CERCLA, 42 U.S.C. §§ 9604(e) and 9622(e).

### XXVI.  NOTICES AND SUBMISSIONS

110.     Whenever, under the terms of this Consent Decree, written notice is required to be given or a report or other document is required to be sent by one Party to another, it shall be directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the other Parties in writing.  However, notices to EPA shall be provided solely to the EPA Project Coordinator unless this Consent Decree designates that notice shall also be provided to the EPA Financial Management Officer.  All notices and submissions shall be considered effective upon receipt, unless otherwise provided.  Written notice as specified herein shall constitute complete satisfaction of any written notice requirement of the Consent Decree with respect to the United States, EPA, and the Settling Defendants, respectively.

As to the United States:        Chief, Environmental Enforcement Section
                                Environment and Natural Resources Division
                                U.S. Department of Justice
                                P.O. Box 7611
                                Washington, D.C.  20044-7611
                                Re: DOJ No. 90-11-2-1260/7

                                        and

As to EPA:                      Mr. William Gresham
                                EPA Project Coordinator
                                United States Environmental Protection Agency
                                Region VII
                                901 N. Fifth Street
                                Kansas City, Kansas  66101
                                (913)551-7804

                                Mr. Joe Poetter
                                EPA Financial Management Officer
                                U.S. EPA Facilities
                                26 West Martin Luther King Drive
                                Mail Code: NWD

Cincinnati, OH 45268

As to the State:                     Mr. Jim Borovich
                                     Nebraska Department of Environmental Quality
                                     1200 N Street Suite 400
                                     Lincoln, Nebraska  68509-8922

As to Settling Defendants:

  City of Hastings:                  Michael Sullivan, Esq.
                                     City Attorney - Environmental
                                     747 N. Burlington, Suite 305
                                     Hastings, NE  68901-4478

  Dutton-Lainson Company:            David Fisher, Esq.
                                     Dunmire, Fisher & Hastings
                                     202 City National Bank Building
                                     Hastings, NE  68902-1044

  Dravo Corporation:                 Lawrence Demase, Esq.
                                     Reed Smith LLP
                                     435 Sixth Avenue
                                     Pittsburgh, PA  15219

                                     Kevin Whyte, V.P. and General Counsel
                                     Carmeuse North America/Dravo Corporation
                                     11 Stanwyx Street
                                     Pittsburgh, PA 15222

Settling Defendants' Project Coordinator:

                                     Mr. Dave Wacker, City Engineer
                                     City Hall, Second Floor
                                     220 N. Hastings Avenue
                                     Hastings, NE 68901
                                     (402)461-2330

## XXVII.  EFFECTIVE DATE

111.    The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court, except as otherwise provided herein.

## XXVIII. **RETENTION OF JURISDICTION**

112.     This Court retains jurisdiction over both the subject matter of this Consent Decree and the Parties for the duration of the performance of the terms and provisions of this Consent Decree for the purpose of enabling any of the Parties to apply to the Court at any time for such further order, direction, and relief as may be necessary or appropriate for the construction or modification of this Consent Decree, or to effectuate or enforce compliance with its terms, or to resolve disputes in accordance with Section XIX. (Dispute Resolution) hereof.

## XXIX. **APPENDICES**

113.     The following appendices are attached to and incorporated into this Consent Decree:

> "Appendix A" is the ROD.
> "Appendix B" is the SOW.
> "Appendix C" is the map of the Site and the Subsite.
> "Appendix D" is the list of the Settling Defendants.
> "Appendix E" is the Environmental Protection Easement/Declaration of
>       Restrictive Covenants pertaining to the North Landfill, filed in 2000.
> "Appendix F" is the Initial Performance Guarantee for Settling Defendant City of
>       Hastings and Settling Defendant Dutton-Lainson Company.
> "Appendix G"is a is the Initial Performance Guarantee for Settling Defendant
>       Dravo Corporations.
> "Appendix H" is a letter from the U.S. Department of Interior to EPA.

## XXX. **COMMUNITY RELATIONS**

114.     Settling Defendants shall propose to EPA their participation in the community relations plan to be developed by EPA.  EPA will determine the appropriate role for the Settling Defendants under the Plan.  Settling Defendants shall also cooperate with EPA in providing information regarding the Work to the public.  As requested by EPA, Settling Defendants shall participate in the preparation of such information for dissemination to the public and in public meetings which may be held or sponsored by EPA to explain activities at or relating to the Subsite.

## XXXI. **MODIFICATION**

115.     Schedules specified in this Consent Decree for completion of the Work may be modified by agreement of EPA and the Settling Defendants.  All such modifications shall be made in writing.

116.     Except as provided in Paragraph 14. (Modification of the SOW or Related Work Plans), no material modifications shall be made to the SOW without written notification to and written approval of the United States, Settling Defendants, and the Court, if such modifications fundamentally alter the basic features of the selected remedy within the meaning of 40 C.F.R. § 300.435(c)(2)(B)(ii).  Prior to providing its approval to any modification, the United States will provide the State with a reasonable opportunity to review and comment on the proposed

modification.  Modifications to the SOW that do not materially alter that document, or material modifications to the SOW that do not fundamentally alter the basic features of the selected remedy within the meaning of 40 C.F.R. § 300.435(c)(2)(B)(ii), may be made by written agreement between EPA, after providing the State with a reasonable opportunity to review and comment on the proposed modification, and the Settling Defendants.

117.   Nothing in this Decree shall be deemed to alter the Court's power to enforce, supervise or approve modifications to this Consent Decree.

## XXXII.  LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

118.   This Consent Decree shall be lodged with the Court for a period of not less than thirty (30) days for public notice and comment in accordance with Section 122(d)(2) of CERCLA, 42 U.S.C. § 9622(d)(2), and 28 C.F.R. § 50.7.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations which indicate that the Consent Decree is inappropriate, improper, or inadequate. Settling Defendants consent to the entry of this Consent Decree without further notice.

119.   If for any reason the Court should decline to approve this Consent Decree in the form presented, this agreement is voidable at the sole discretion of any Party and the terms of the agreement may not be used as evidence in any litigation between the Parties.

## XXXIII.  SIGNATORIES/SERVICE

120.   Each undersigned representative of a Settling Defendant to this Consent Decree and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind such Party to this document.

121.   Each Settling Defendant hereby agrees not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree unless the United States has notified the Settling Defendants in writing that it no longer supports entry of the Consent Decree.

122.   Each Settling Defendant shall identify, on the attached signature page, the name, address and telephone number of an agent who is authorized to accept service of process by mail on behalf of that Party with respect to all matters arising under or relating to this Consent Decree.  Settling Defendants hereby agree to accept service in that manner and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including, but not limited to, service of a summons.  The parties agree that Settling Defendants need not file an answer to the complaint in this action unless or until the court expressly declines to enter this Consent Decree.

*RD/RA Consent Decree*          *U.S. v. City of Hastings, Dravo Corporation, and Dutton-Lainson Company*

### XXXIV.  <u>FINAL JUDGMENT</u>

123.     This Consent Decree and its appendices constitute the final, complete, and exclusive agreement and understanding among the parties with respect to the settlement embodied in the Consent Decree.  The parties acknowledge that there are no representations, agreements or understandings relating to the settlement other than those expressly contained in this Consent Decree.

124.     Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between and among the United States and the Settling Defendants.  The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

SO ORDERED THIS <u>15</u> DAY OF <u>November</u>, 200<u>7</u>.

/s/ Lyle E. Strom
_____
LYLE E. STROM

United States District Judge

48

***THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. the City of Hastings et al., relating to the North Landfill Subsite, Hastings Ground Water Contamination Superfund Site.***

FOR THE UNITED STATES OF AMERICA

RONALD J. TENPAS
Acting Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice
Washington, D.C.  20530

14 Sep 2007
Date

Ellen M. Mahan
Deputy Section Chief
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C.  20044-7611

14 Sep 2007
Date

Sarah Himmelhoch
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C.  20044-7611

Joe W. Stecher
United States Attorney
District of Nebraska
1620 Dodge Street, Suite 1400
Omaha, Nebraska 68102
(402) 661-3700

*THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. the City of Hastings et al., relating to the North Landfill Subsite, Hastings Ground Water Contamination Superfund Site.*

8/30/07
Date

Cecilia Tapia
Director
Superfund Division
Region VII
U.S. Environmental Protection Agency
901 N. Fifth Street
Kansas City, Kansas 66101


8/29/07
Date

Audrey Asher
Senior Assistant Regional Counsel
U.S. Environmental Protection Agency
Region VII
901 N. Fifth Street
Kansas City, Kansas 66101

*THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. the City of Hastings et al., relating to the North Landfill Subsite, Hastings Ground Water Contamination Superfund Site.*

FOR CITY OF HASTINGS

August 27, 2007

Date

Signature

Name (print):   Matthew S. Rossen

Title:          Mayor

Address:        220 N. Hastings Avenue

                Hastings, NE 68901




Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print):   Connie Hartman

Title:          City Clerk

Address:        220 N. Hastings Avenue

                Hastings, NE 68901

                (402) 461-2312

Ph. Number:

51

*THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. the City of Hastings et al., relating to the Hastings Ground Water Contamination Superfund Site.*

FOR DRAVO CORPORATION

8/24/07
Date

Signature: _K____ _____
Name (print): *Kevin J. Whyte*
Title: *V.P. General Counsel*
Address: *11 Stanwix Street - 11ᵗʰ Floor*
*Pittsburgh, PA 15222*

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): *SAME AS ABOVE*
Title: _____
Address: _____

Ph. Number: _____

52

*THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. the City of Hastings et al., relating to the Hastings Ground Water Contamination Superfund Site.*

FOR DUTTON-LAINSON COMPANY

__8-21-07__
Date

Signature: _Gayle E McClure_
Name (print): Gayle E. McClure
Title: Senior Vice-President
Address: Dutton-Lainson Company
         PO Box 729
         Hastings, NE 68902-0729

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): David H. Fisher
Title: DUNMIRE, FISHER & HASTINGS
Address: PO Box 1044
         Hastings, NE 68902-1044

Ph. Number: (402) 463-1383

53

*THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. the City of Hastings et al., relating to the North Landfill Subsite, Hastings Ground Water Contamination Superfund Site.*

FOR THE UNITED STATES OF AMERICA
SETTLING FEDERAL AGENCY

9/14/07
Date

Eileen McDonough
Trial Attorney
Environmental Defense Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D. C.  20044-7611

54